[Crim. No. 661.   Department One.—December 7. 1900.]

THE PEOPLE, Respondent, v. W. J. GOLDSWORTHY, Appellant.

CRIMINAL LAW—BURGLARY—INTENT TO COMMIT ARSON—INFORMATION.— An information for burglary charging that the defendant entered the basement of a certain store "with intent to commit arson" sufficiently charges the offense, and need not state the facts constituting the crime of arson. It is sufficient to allege an entry into a building, room, or apartment, with intent to commit a specific felony.

ID.—MOTIVE FOR ARSON — INSURANCE POLICIES ON DEFENDANT'S PROPERTY—PAROL EVIDENCE.—In order to establish a motive for the intent of the defendant to commit arson, the fact may be shown

that he was engaged in a general merchandise business in the adjoining building, and that his goods therein were insured against loss by fire, and the amount of the policies issued thereon may be proved by parol evidence, especially where it appears that the originals had been canceled and returned to the insurance office.

ID.—AMOUNT OF POLICIES—EXCESS OVER VALUE—IMPROPER CROSS-EXAMINATION—ORDER OF PROOF—DISCRETION—HARMLESS RULING.—Where a representative of the board of trade had testified for the defendant that soon after his arrest he inventoried the stock and fixtures of the defendant and valued them at about eleven thousand dollars, though it was not proper cross-examination for the prosecution to prove by him that the aggregate amount of the insurance policies on the property exceeded twelve thousand dollars, yet the order of proof was in the discretion of the court, and the evidence being proper testimony in chief for the prosecution, its allowance on cross-examination was not prejudicial to the defendant, and does not constitute reversible error.

ID.—INSANITY OF DEFENDANT—QUALIFICATION OF EXPERT WITNESS—REJECTION OF EVIDENCE—DISCRETION OF TRIAL COURT—APPEAL.—In determining the qualification of an expert witness to give an opinion upon the mental soundness of the defendant, the trial court has a broad, legal discretion, and its decision in rejecting his testimony will not be disturbed upon appeal, unless its discretion has been abused and its ruling rejecting the evidence is plainly and indisputably wrong. The fact that this court, if deciding the question at the trial, would, upon the showing made, have allowed the expert to testify, is not the test which should govern this court upon appeal.

ID.—EVIDENCE OF INSANITY—CHIMERICAL THEORY—REBUTTAL BY EXPERT.—Where, as tending to show the insanity of the defendant, it was testified that he consulted a boiler-maker as to the feasibility of making a boiler so light, by the use of aluminum, that he could carry it on his back in prospecting tours, the prosecution may prove in rebuttal by a qualified expert witness that the theory or idea of the defendant was not so chimerical or improbable as to indicate mental unsoundness.

ID.—UNBALANCED MIND—EXCUSE FOR CRIME.—Evidence indicating a mental change in the defendant, and that he had an unbalanced mind, does not establish an excuse for crime, where, as tested by the rules of the common law, the jury were authorized to find from the evidence that the defendant was not so insane as to be irresponsible.

ID.—VARIANCE—"BASEMENT ROOM"—"CELLAR."—The distinction between a "basement room" and a "cellar" may be very slight; and where the defendant is properly charged with entry into a "basement room" with intent to commit arson, and the term "cellar" is not used in the statute, and the evidence suffi-

ciently shows that the place where the arson was attempted was a "room" in a "basement," where merchandise was stored, though called by some of the witnesses a "cellar" as well as a "basement," there is no substantial variance.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Joseph H. Budd, Judge.

The evidence showed that the basement of the adjoining store where the arson was attempted was partly underground. It had walls of brick, and was used for the storage of merchandise. It had a window in the rear, but was otherwise dark, and was lighted by gas. There were pillars in it for the support of the floor above. Shelves were built in it where merchandise was stored; and it had a floor and a partition. It was frequently spoken of by several witnesses as the "cellar," and also as "the basement." Further facts are stated in the opinion of the court.

J. G. Swinnerton, and J. J. Fitzgerald, for Appellant.

Tirey L. Ford, Attorney General, and Henry A. Melvin, for Respondent.

GAROUTTE, J.—The defendant has been convicted of the crime of burglary, and appeals to this court.

The information charged that defendant entered "the basement room of a certain store, with intent to commit arson." It is now claimed that the pleading does not state the commission of a crime. Section 459 of the Penal Code provides: "Every person who enters any house, room, apartment, tenement, . . . . or other building, . . . . with intent to commit grand or petit larceny, or any felony, is guilty of burglary." It is contended that "the facts constituting the arson should be alleged." But we deem the law of pleading in this state, as declared by the code and the authorities, does not demand it. In *People v. Nelson,* 58 Cal. 107, it was held that an indictment stating that the entry was made with intent to commit a felony was fatally defective; yet the court, in so holding, plainly intimated that an indictment of the character of the information here involved would be sufficient. The court in that case stated the question to be: "Was it necessary to allege

an intent to commit a specific felony?" and in answer to the interrogatory held that it was necessary. In *People v. Burns,* 63 Cal. 614, a case identical in principle with that at bar, it was held that the information was sufficient. In *People v. Smith,* 86 Cal. 238, the information was declared sufficient, and it was there charged that the entry was made with intent to commit "larceny."

There was an abundance of evidence introduced at the trial to prove the allegations of the information. Indeed, the evidence as to the *res gestae* was not contradictory to any extent, and defendant relied alone upon the plea of insanity. Defendant was engaged in the general merchandise business and was indebted to a considerable amount, although his assets appear to have largely exceeded his liabilities. The motive for the crime is claimed upon the part of the prosecution to have been a purpose to secure the insurance money payable upon the loss of his goods by fire. The policies of insurance were not introduced in evidence. Indeed, the prosecution did not seem to know where they were. Many objections were made by defendant going to the introduction of oral evidence bearing upon this matter of insurance. But we find none of the exceptions taken thereto possessed of substantial merit. The fact that the property carried insurance was a matter which could be proven by parol. Indeed, the witness Keyes so testified without objection. The witness Grunsky was asked: "Did your firm, at any time during the last year, issue to Mr. J. W. Goldsworthy any policy or policies of insurance for any insurance company upon his stock of groceries or other personal property about his grocery store?" This question was unobjectionable. We find no attempt made by the prosecution in the case in chief to prove by parol the amount of insurance resting upon this personal property, although we are strongly inclined to believe that such evidence would have been competent, especially so in view of the showing that the original policies of insurance had been canceled and returned to the San Francisco office.

The defendant placed one Harmon on the witness stand, who testified that, as a representative of the board of trade of the city of San Francisco, he inventoried and appraised the stock and fixtures of defendant soon after his arrest, and the

valuation was given by him at the sum of about eleven thousand dollars. Upon cross-examination he stated that he went to see defendant after his arrest to have some insurance policies of the stock transferred. He was then asked: "What was the aggregate of those insurance policies?" An objection followed that the evidence was not cross-examination and not the best evidence. The objection being overruled, the witness answered that it was some twelve thousand dollars. This evidence was not cross-examination; yet it was material and competent evidence for the state, if offered at the proper time. Our attention has been called to no case where the judgment has been reversed by reason of the admission of competent, material evidence after an objection that it was not cross-examination was improperly overruled. The trial court is allowed a wide range in fixing the order and manner of admitting competent evidence. The state could have been allowed by the court, for the time being, to have treated this witness as its own witness, and then have asked him this same question. Such a course marks an ordinary practice. And if that may be done, the ruling here assailed does not constitute reversible error. The remaining portion of the objection, to the effect that the answer did not call for the best evidence, is likewise unsubstantial. It already had been developed by the evidence that the policies had been canceled, and were without the jurisdiction of the court; but, in addition to that fact, we are satisfied the proof sought to be established, to wit, the aggregate amount of money called for by the policies of insurance, could be established by parol evidence. Indeed, the mathematical calculation as to the sum total of these various amounts represented by the insurance policies would have to be made by some person. The evidence of the witness Harmon as to the manner and time of the transfer of the insurance policies, while not cross-examination, in no way injuriously affected defendant's rights. The exception taken to the evidence of the witness Keys is disposed of by the conclusion already declared upon the consideration of the testimony of Harmon.

Error is claimed upon the part of the court in holding that Dr. Louis Maddock was not sufficiently qualified to give an opinion as an expert upon the mental soundness of defendant. In some jurisdictions it is decided that the trial court

is the absolute arbiter as to the qualifications of an offered expert. In this state the court has a broad legal discretion in deciding the question, and the ruling rejecting the witness must be plainly and indisputably wrong, or the appellate court will not disturb it. The fact alone that, upon the showing made at the trial, this court, if at *nisi prius*, would have allowed the offered expert to testify, is not the test which should govern here. Wharton on Criminal Evidence, section 406, in speaking as to experts says: "Except in an extraordinary case an appellate court will not reverse on account of a mistake of judgment on the part of the trial court in determining qualifications of this class." Greenleaf on Evidence, sec. 430f, thus declares the law upon the subject: "In most jurisdictions, it is declared that the determination of a witness' experiential qualifications should be left to the discretion of the trial court. The phrasing differs and the practice seldom lives up to the theory. In some courts this discretion is not reviewable; in others it is reviewable only in case of its abuse; in others it is said 'largely' to control. It cannot be doubted that this beneficent principle should be further extended and strictly observed, so that a witness' experiential qualifications should be invariably left to be determined by the trial court without review." Without making a recapitulation of the evidence here, we deem it sufficient to justify us in saying that the record does not disclose a state of facts which authorizes this court in holding that the trial court abused its discretion in rejecting the testimony of the proffered expert.

As tending to show the unsound mental condition of defendant, it was proven that he consulted a boiler-maker as to the feasibility of making a boiler so light by the use of aluminum that he could carry it upon his back in his prospecting tours. In rebuttal, the prosecution placed Professor Corey, of the State University, an expert upon the subject, on the stand, for the purpose of showing that the theory or idea of defendant was not so chimerical or improbable as to indicate mental unsoundness. In view of what we have already said in sustaining the action of the trial court in ruling upon the qualifications of experts, this witness must be deemed qualified. The evidence given by him was interesting as a publication of valuable information, and it certainly was of a very general na-

ture. But this may be said: If it tended to disprove the claimed chimerical ideas of defendant upon the use of aluminum as an element in the construction of steam boilers, it was proper and material, and, if it did not do so, then the error in admitting it was certainly harmless.

It is insisted that a fatal variance is disclosed between the allegations of the information and the evidence. The information charges the entry to have been made into a "basement room." It is now claimed that the evidence shows the entry to have been made into a "cellar." The difference between cellars and basement rooms in many cases is slight indeed. An entry into a cellar, with felonious intent, probably does not constitute the crime of burglary when tested by the statute, and for this reason, if no other, we would be slow to hold the place entered in this case to be a cellar rather than a basement room. But upon an examination of the record we are entirely satisfied the evidence amply supports the allegation of the information that the entry was made into a "basement room."

This case in its facts is most peculiar. The defendant, an old resident of the city of Stockton, of good reputation, engaged for years in a large commercial business, having a stock of goods with the appurtenances, the cost valuation being about the amount of the insurance resting upon the property, his liabilities only one-fourth of that amount, is detected at night in a basement adjoining his store, in the very act of applying a torch to the property of his immediate business neighbor in order that his own property may be destroyed and the insurance money obtained. The preparations made by defendant in order to secure an entire and certain destruction of the property were perfect and complete, and were such as to not only surely result in the destruction of his own and his neighbor's property, but were such as to surely result in the loss of many lives of persons sleeping in the lodging-house situated upon the floor above. Upon the other side of the picture we find considerable evidence indicating an unbalanced mind and a mental change in the defendant evidently had been going on for a few years past. But an unbalanced mind, of itself, does not excuse crime. And in this case, tested by the rules of criminal law, the jury could well say the evidence pointing to the

defendant's insanity was not of that character which should acquit him of the heinous charge.

We have carefully examined the instructions given by the court to the jury, and find no substantial objection to them.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., and Harrison, J., concurred.