[Crim. No. 5784.   Second Dist., Div. One.   Apr. 16, 1957.]

THE PEOPLE, Respondent, v. CLARENCE D. WILLIAMS, Appellant.

Clarence D. Williams, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, for Respondent.

WHITE, P. J.—In an indictment returned by the grand jury of Los Angeles County, defendant was accused of a violation of section 11502 of the Health and Safety Code in that on or about February 21, 1956, he agreed to furnish and sell a preparation of heroin to one John Doe, and did thereafter furnish and sell to said person another substance in lieu of heroin. The indictment was amended to allege two prior felony convictions, to wit: grand theft in the Superior Court of Los Angeles County, and conspiracy and forgery in the District Court of the United States in and for the northern district of California, and that upon the latter conviction defendant served a term of imprisonment in a federal prison.

In the trial court defendant was represented by counsel, pleaded not guilty to the substantive charge and admitted the prior convictions as alleged. Trial by jury was duly waived and it was stipulated that the People's case be submitted "upon the testimony taken at the preliminary hearing in this matter . . ." and the exhibits received in evidence at such proceeding. It was further stipulated that either side might produce additional testimony if they desired so to do. In this regard it appears from the record that no preliminary examination was held in this case and subsequently no transcript of such a proceeding was available or ever delivered to the trial judge. Neither was the transcript of the proceedings had before the grand jury delivered to the trial court. The cause proceeded to trial and the decision therein was predicated upon testimony taken at such trial. Defendant was adjudged guilty and sentenced to state prison. From the judgment of conviction he prosecutes this appeal.

Upon the request of defendant, counsel was appointed by this court to represent him on his appeal. Under date of November 21, 1956, court appointed counsel addressed a communication to this court wherein he advised that he had thor-

oughly studied the transcripts in the case and had concluded that an appeal ''would not be meritorious.'' Counsel's conclusion in this regard was grounded on the fact that ''There is no question that the crime was committed, the sole question was, Did the defendant commit the crime? The defendant claimed that he was the wrong man and brought alibi witnesses to show that he was at a different place when the crime was committed. The judge did not believe the alibi witnesses and convicted the defendant. Since the only question of merit in the case was the identity of the perpetrator of the crime and the judge found, on a conflict in the evidence that the defendant was the perpetrator an appeal from this verdict would be frivilous because on appeal the Court will not redetermine conflicts in the evidence.''

On December 14, 1956, the clerk of this court wrote defendant, in part, as follows:

''In response to your request for counsel to assist you with your appeal, this court, as is its policy, asked the Bar Association to select from its panel one of its experienced attorneys to examine the record on appeal in your case and report to this court whether he felt he could be of assistance to you in writing the briefs.

''The transcript in your case was studied carefully and the attorney has reported to this court that he feels that the appeal in your case in lacking in merit and he feels that he could not conscientiously accept appointment and file briefs. In this situation the court does not feel that it is justified in appointing counsel to represent you on appeal.

''However you may file briefs on your own behalf if you wish or obtain private counsel to do so.

''Please consider this letter notice under Rule 17a of the Rules on Appeal, and if your opening brief is not filed within 30 days from date of this letter, or such time extended by this court, the appeal in your case will be dismissed.''

No reply was received to such letter and no brief has been filed on behalf of defendant or respondent. However, in accordance with the policy of this court when such a situation arises, we have carefully examined the record now before us and which reflects the following as a fair epitome of the factual background surrounding this prosecution. William Anderson, a police officer of the city of Los Angeles, assigned to the narcotics squad, testified that on February 14, 1956, he encountered defendant at an Auto Park on South Broadway

in the city of Los Angeles; that he engaged defendant in conversation, asking him if he knew a person known as "T-Bone"; that defendant replied he did not know "T-Bone" personally, but had heard of him. The witness further testified that he said to defendant: ". . . I am living with a girl that was sick, she had a monkey on her back (a term used by a person who is addicted to narcotics), and I had to find T-Bone." That defendant stated he did not know "T-Bone," but asked, "What did I need?", whereupon the officer said, ". . . that the reason I wanted to find T-Bone was to fix the girl up." That defendant said, "What do you need, man?" to which the witness replied, ". . . I told him about the girl. He said, 'How much junk are you looking for, man?' And I asked him to get in the car and we could talk while we drove around the block.

"I introduced myself as 'Andy,' and at that time the defendant stated his name was J. C. I said, 'How about the junk?' And J. C. stated, 'How much loot have you got?'

"And I said that I had a dime, and J. C. said, 'Nobody will deal for less than half a spoon,' and I said, 'How much is that?'

"And the defendant stated, 'Twelve and a half.'

"I further stated, 'If I dig up the scratch, can you get the junk?' And J. C. said, 'Yeah, man, yeah.'

"He said, 'You get the bread and I'll fix you up.' "

The officer further testified that he then advised the defendant he would attempt to obtain more money and arrangements were made to meet at the same location on the next day at 2 p.m. Pursuant to this agreement, the officer again met defendant who entered the former's automobile and advised him to drive to a certain location. Upon arrival, defendant told the officer to stop and said, "You stay here, I can't take you in. You give me the bread (money) and I'll get the junk." According to the testimony of the officer he remonstrated with the defendant about leaving the former in the automobile and insisted upon accompanying defendant into the New Palace Café, but it was finally agreed that defendant alone should enter the place to obtain the narcotic. When defendant emerged from the café he informed the officer he was unable to contact "him." A few moments later defendant said he sighted the man he was looking for, walked away and a few moments later reappeared in the company of another man and both approached the officer's automobile, whereupon the defendant said, "This is Jimmy," and with that "Jimmy

reached in the window and dropped a small package wrapped with cellophane in my lap." The officer thereupon handed "Jimmy" $12 and placed the package in his pocket. Upon the departure of "Jimmy," defendant asked the officer, "Before you cut out, man, are you going to take care of me for my trouble?" and the officer handed defendant $1.50.

Jay Allen, a qualified forensic chemist, testified that he examined the contents of the foregoing package and "found no evidence of narcotics." Although the record is not clear it seems apparent that defendant was not arrested on February 14, 1956, when the alleged transaction with the officer took place, but was apprehended about midnight on March 23, 1956. As to the identification of defendant, Officer Anderson testified at the trial that shortly after the foregoing transaction took place he made notes as to defendant's description. That defendant was wearing dark brown slacks, a light weight tan sport shirt. That defendant "had a mustache and whiskers and a small patch under his lower lip." That the time of his arrest about March 21, defendant was "dressed at that time almost identically." The officer stated positively that defendant was the man whom he encountered on February 13 and 14, 1956.

As a witness in his own behalf defendant testified that on the day here in question, February 14, 1956, he lived at the home of Mrs. Ella Taylor, that he left there about 7 a. m. on that day and returned about 8 :45 a. m. That he worked around the place cleaning the floors and appliances from about 10 a. m. until 5 p. m. (the transaction here in question when the package was transferred to the officer occurred, according to the officer, at about 2 :40 p. m.). Defendant testified that the first time he saw Officer Anderson was at the time of his arrest on March 23. In answer to the question, "Had you offered him (the officer) any narcotics?" defendant replied, "No, I don't even use them. I don't even fool around with narcotics and I don't have associates that fool around with them, and I don't fool with them, so I wouldn't know." Defendant further testified that at no time did he wear a goatee or "have any hairs underneath" his lip.

As a witness for the defendant, Mrs. Ella Taylor corroborated defendant's testimony that he lived at her home, that on February 14, 1956 he was working around her home from around 10 :30 a. m. until 5 p. m. That she was present in the house all of that time and that defendant was in her presence.

The witness testified that she fixed the day as February 14th because it was the commemoration of ''a celebration . . . I call it Mardigras.''

Miss Dolores Gambrel testified that on February 14, 1956, she was at the home of the previous witness, Mrs. Ella Taylor. That she arrived there about 8 a. m., that defendant arrived later that morning and throughout the day was engaged in washing walls and cleaning the house. This witness testified that defendant did not leave the house that day and was there when she left at 8 p. m. She testified that she was assisting defendant in his work. The witness further testified that she remembered the day because there was a Valentine party for the children on that day. Miss Gambrel further testified that the appearance of defendant on February 14th was the same as it was in court and not as testified to by the officer.

Mrs. Luberta Anderson testified that on the day in question she met her child when school was dismissed at 2 o'clock and went to the home of Mrs. Taylor, arriving there about 2:10 p. m., where she observed defendant cleaning the walls of the house. That she left Mrs. Taylor's home at 3:30 p. m. to pick up some clothes at an establishment that closed at 4 o'clock. That between 2:15 and 3:30 p. m. the defendant was positively at Mrs. Taylor's home. This witness also characterized defendant's appearance in court as the same as it was on February 14th, except on the latter day he was dressed in working clothes.

Not a single objection or motion to strike was made at the trial and no questions of law are presented by the record on this appeal. The sole question is whether the evidence is sufficient to support the adjudication of guilt.

■ In the instant case it must be conceded that the testimony of Officer Anderson, if believed, is amply sufficient to sustain the conviction. He positively identified appellant as the man with whom on February 13, 1956, he negotiated ·for the purchase of a narcotic and as the man who on the following day consummated the transaction. True, there was substantial evidence of alibi presented by appellant that if believed would have warranted an acquittal. The only question therefore presented is one of credibility of the witnesses.

■ And it is now well established in our law that an appellate tribunal is not authorized to determine the credibility of witnesses or the weight of the evidence, and is limited to a determination of whether upon the face of the evidence it can justly be held that sufficient facts could not have been

found by the trier thereof to warrant the inference of guilt. In other words, as was said in *People* v. *Tom Woo,* 181 Cal. 315, 326 [184 P. 389] and quoted in *People* v. *Perkins,* 8 Cal. 2d 502, 510 [66 P.2d 631], and *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." Manifestly, no such stricture can be placed on the evidentiary features of this case upon which the trial judge relied.

While some variances or inconsistencies do appear in the testimony of Officer Anderson and might afford a persuasive argument to the trial judge against the reliability of the officer's testimony, when viewed in the light of defendant's alibi testimony, we can see in them nothing from which a reviewing court could justly conclude that the officer's entire testimony is, *per se,* unbelievable, and that it was therefore the duty of the trial judge not only to wholly disregard it, but to accept the testimony of the appellant and witnesses in his behalf, or at least find that appellant's guilt had not been disclosed by the evidence to a moral certainty and beyond a reasonable doubt. As has been so often reiterated by the courts of this state, reviewing judges are obviously in no position to determine the credit which should be accorded to a witness or to weigh the testimony. ▪ For this reason, the Legislature has ordained that appellate courts are not authorized to review evidence, except where on its face it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. ▪ The credibility of witnesses and the effect and value of evidence are committed solely to the duly authorized arbiter of the facts (Code Civ. Proc., § 1847; Code Civ. Proc., § 2061). ▪ Under the rules above noted, it necessarily follows that in the case at bar, the trial judge was authorized, if he conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony which might have been contradictory to that of the witness Officer Anderson and to accept that of the latter however sharply his testimony might have conflicted with the testimony of other witnesses.

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Fourt, J., concurred.