[Crim. No. 6582.   Second Dist., Div. One.   Nov. 16, 1959.]

THE PEOPLE, Respondent, v. AUGUSTINE MONTEZ, Appellant.

Bradford A. Arthur for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment wherein the defendant was found guilty of a violation of section 506, subdivision a, Vehicle Code (driving a vehicle while addicted to or under the influence of narcotics) and wherein it was found that he had previously been convicted of and had served a term in prison for attempted robbery.

In an information filed in Los Angeles County the defendant was charged with a violation of section 506, subdivision a of the Vehicle Code. It was also set forth therein that prior to the offense charged in the information the defendant had been convicted of attempted robbery in Los Angeles County in about April, 1954 and that he had served a term in prison therefor. The defendant pleaded not guilty and denied the prior conviction. Trial by jury was waived and defendant was found guilty and the prior conviction was found to be true. The defendant was sentenced to the state prison.

A résumé of the facts is as follows: Raymond Camacho, a Los Angeles police officer, assigned to the Homicide Division (gang detail) was checking the Alpine area in the city on August 19, 1958, for anything illegal. He was there because of information he had received. From the information he had · in his possession he expected to find the defendant and one "Lucky" with some narcotics.

The officer first saw the defendant's car on Alpine Street going easterly toward Grand Street. The officer followed the defendant to Grand Street where the defendant turned left, made another left turn into an alleyway and then another left onto Bunker Hill, and then turned right onto Alpine. When the officer first saw the defendant's car, it was going "in a rapid manner," 35 to 40 miles per hour in the residential district on a two-lane street. When the defendant turned the car left onto Grand, it almost hit the curb and while going at a high rate of speed turned left into the alleyway and "bounced up" over a concrete driveway. When the car of the defendant came onto Alpine, the officer honked the horn of the car he was driving and blinked the lights. The defendant's car pulled over to the curb, hit it, started up over it and then rolled back. The officer was in an unmarked car. Camacho and his officer-partner approached the defendant's vehicle. The defendant started to get out of his car and was told to stay "where you are." The defendant got out of his car in spite of the directive. The officers saw a woman and a young boy in the defendant's automobile.

The officer asked the defendant his name and the defendant,

without comment, handed him a pair of drivers' licenses (duplicates), bearing the name Salvadore Ramirez Zamora. The officers talked with the woman in the car and then again asked the defendant his name and he answered Augustine Montez. The defendant stated that a friend had found the licenses in a bar and that he had asked the friend for them. The defendant stated in effect that if a "harness bull" (uniformed policeman) had stopped him he could have bluffed his way out of any further proceedings. He did not possess a legitimate driver's license.

The officer noted that the defendant appeared to be "drunk or very sleepy." The defendant moved slowly and appeared as if he had just awakened. It was necessary for the officers to repeat the questions which they put to him. Camacho shone his light into the defendant's eyes and they showed "very poor reaction to light, and his eyes were pinpointed."

The defendant was wearing a short-sleeved shirt and the officer saw on his arm a tattoo of a woman and also scar tissue and "what appeared to be numerous scabs." When asked about the marks the defendant said that he was a narcotic user and had last had a "fix" about two hours ago. He stated further that he and another man had divided a "cap" which they bought from a person named "Wero." He further said that he had been using about a "cap" a day and that he knew that a person addicted to narcotics was not supposed to drive an automobile on the highways or streets, but that this was an emergency situation. The defendant stated that the marks were "old marks." The officer observed that the defendant had quite a few marks on his arm and considerable scar tissue, and further that there was one very new mark. Camacho was experienced in police work. He had been with the police department for five years and had observed as many as 500 addicts and the various marks on their arms. The defendant was arrested and the car impounded.

A narcotics division officer of extensive experience who had examined several thousand addicts and had testified in court at least 300 times stated that he examined the defendant on the day after the arrest. The witness further stated that in his opinion the defendant was addicted to the use of narcotics. The opinion was based in part on the physical symptoms (defendant's withdrawals) plus physical evidence of use, such as the scab marks and the one mark which was less than 24 hours old. A photograph of the defendant's arm was taken and introduced into evidence.

The appellant asserts as error that:

"The Trial Judge prejudicially denied the defendant his constitutional right to fully cross-examine and impeach the arresting officer who appeared against defendant, after an arrest and search without a warrant, resulting in the evidence presented and relied upon for conviction."

■ The court cannot determine from a reading of the defendant's brief and the record wherein there was any prejudicial error. It does appear that Officer Camacho was testifying and had reached the point where, in his recital of events, the defendant was out of his car and was asked to relate "what was next done and said, in the order in which it was done and said." Counsel for the defendant then stated:

"MR. DAVIS: Your Honor pleases, at this time may all of this evidence be admitted subject to a motion to strike, based on reasonable and competent cause, which I assume we're going to have to take up on cross examination rather than direct examination.

"THE COURT: Well, I think reasonable and probable cause has been shown already, Mr. Davis.

"MR. DAVIS: If the Court pleases, there is another problem was brought up at the preliminary examination that is going to have to be gone into.

"THE COURT: All right, we will take it up when we come to it.

"MR. DAVIS: Thank you."

The officer then related in effect, without objection, what has heretofore been set forth in the résumé of facts. During the cross-examination of the officer the following occurred:

"Q. As a matter of fact, Officer, you were there because of some information that you had received, is that correct? A. That is correct.

"Q. And you had received some information about 8:45 or 8:50 that evening, is that right? A. That is correct.

"Q. And would you relate to the Court, please, the information that you received regarding this defendant?

"MR. ESNARD: I am going to object to the conversation, your Honor, on the grounds it calls for hearsay.

"THE COURT: Objection will be sustained.

"Q. By MR. DAVIS: Now, did you receive some information about the defendant at about 8:45 or 8:50 this evening?

"MR. ESNARD: Just a minute. I am going to object as improper cross examination, and immaterial."

The officer stated further on cross-examination that he did not have a search warrant.

Counsel for the defendant further inquired on cross-examination:

"Q. Now, Officer, I will direct your attention to the proceedings at the preliminary examination in this case. You recall testifying in that case, is that correct? A. Yes, sir.

"Q. Do you remember testifying at that time, under oath, that you had received some confidential information about this defendant and a person known as Lucky?

"MR. ESNARD: I don't see the materiality.

"THE COURT: I don't either, Mr. Davis. He may have testified at that time. This arrest wasn't predicated upon any confidential information.

"MR. DAVIS: If your Honor pleases, at the testimony at the preliminary examination, when this officer was under oath, he testified that the arrest was made on the information he received from a confidential informant.

"THE COURT: The Court can't find that in this hearing though.

"MR. DAVIS: Well, that's correct, your Honor; but for the purposes of impeachment, can't he be asked as to how he testified under oath before?

"THE COURT: Objection will be sustained. I don't see any materiality to it at all.

"MR. DAVIS: I have nothing further to ask this officer.

"THE COURT: That's all, Mr. Camacho."

The appellant now asserts that the legality of the arrest was in question and that had he been permitted to continue with the cross-examination the court would have had no alternative but to release the defendant for one reason or another.

As heretofore indicated, it is not clear from the brief of the appellant on what conduct of the court appellant bases a claim of prejudicial error under the circumstances. Appellant did not make it clear to the trial court what the purpose of the testimony was. Prejudicial error will not be presumed under the circumstances.

We think there was no prejudicial error committed by the court. The appellant here admitted that he drove the automobile and further, the officer saw him drive the car. The appellant admitted that he was an extensive user of narcotics and the physical appearance of the appellant's arm was such that it was apparent that he used narcotics extensively and had used some within 24 hours of the time of the examination

which occurred on the day following his arrest and on which day he started to suffer narcotic withdrawal pains. Further, the reporter's transcript shows that at the time of sentence appellant's counsel stated as follows:

"MR. DAVIS: If the Court please, this is another case with the problem the Court stated before; the matter of the protection of society as well as rehabilitation of the Defendant. Now, I know, based on the Defendant's prior record, little consideration should be given to him. However, we have this situation. *Mr. Montez has applied to the Federal Hospital at Fort Worth for admission as a narcotic addict. I have a letter back* from the Department of Health, Education and Welfare, from Fort Worth, *stating* that upon the conclusion of this case, *he will be eligible to go into Fort Worth.* (Emphasis added.)

". . . . . . . . . . . . .

". . . . . . . . . . . . .

"MR. DAVIS: Yes. I think he can be sent to Vacaville for treatment."

It would appear that the evidence is overwhelmingly in favor of the prosecution and that it is no miscarriage of justice to hold that the appellant was a narcotic addict or that he was under the influence of a narcotic drug and that he drove an automobile on the occasion mentioned in the information.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.