[Crim. No. 7638. Second Dist., Div. One. Nov. 27, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE ELLIOTT ROBERTS, Defendant and Appellant.

Clarence Elliott Roberts, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of conspiracy to commit robbery, burglary and forgery, and of robbery and forgery.

In an information filed in Los Angeles County on August 4, 1960, appellant and three codefendants named Roy Alfred Tarleton, Jewell Ellington and Tim Gastin, Jr. were charged with conspiracy to commit robbery, burglary and forgery in that they did commit on specified dates certain described overt acts within the County of Los Angeles. (See footnote below.) In the third count appellant and two codefendants (Tarleton and Ellington) were charged with robbery of Kelly Key on June 26, 1960; in count four appellant and the codefendants named in count three were charged with the robbery of

---

OVERT ACT No. 1

That on or about the 24th day of June, 1960 the defendant CLARENCE ELLIOTT ROBERTS rented a Ford Thunderbird automobile from Budget Car Rentals.

OVERT ACT No. 2

That on or about the 26th day of June, 1960, the defendant CLARENCE ELLIOTT ROBERTS provided and gave two automatic pistols to the defendants ROY ALFRED TARLETON and JEWELL ELLINGTON.

OVERT ACT No. 3

That on said 26th day of June, 1960, the defendant CLARENCE ELLIOTT ROBERTS drove the defendants ROY ALFRED TARLETON, and JEWELL ELLINGTON to Keys Market at 10904 South San Pedro Street, Los Angeles, California.

OVERT ACT No. 4

That on or about the 27th day of June, 1960, the defendant CLARENCE ELLIOTT ROBERTS provided and gave to the defendants TIM GASTIN, JR. and ROY ALFRED TARLETON two automatic pistols.

OVERT ACT No. 5

That on said 27th day of June, 1960, the defendant CLARENCE ELLIOTT ROBERTS drove the defendants TIM GASTIN, JR. and ROY ALFRED TARLETON to Joe's Liquor Store at 5029 South Figueroa Street in said City of Los Angeles.

OVERT ACT No. 6

That on or about the 30th day of June, 1960, the defendant CLARENCE ELLIOTT ROBERTS rented a Chevrolet convertible automobile from said Budget Car Rental.

OVERT ACT No. 7

That on or about the 1st day of July, 1960, the defendant CLARENCE ELLIOTT ROBERTS provided and gave two automatic pistols to the defendants JEWELL ELLINGTON and ROY ALFRED TARLETON.

OVERT ACT No. 8

That on or about said 1st day of July, 1960, the defendant CLARENCE ELLIOTT ROBERTS drove the defendants JEWELL ELLINGTON and ROY ALFRED TARLETON to Jack Like's clothing store at 800 West 54th Street in said City of Los Angeles.

OVERT ACT No. 9

That on said 1st day of July, 1960, the defendants JEWELL ELLINGTON and ROY ALFRED TARLETON took from Lena Like at gunpoint one lot of blank money orders.

OVERT ACT No. 10

That on said 1st day of July, 1960, the defendant CLARENCE ELLIOTT ROBERTS passed, uttered and tendered a forged money order to Walter Becker, Jr.

Lena Like on July 1, 1960 and in count five appellant was charged with a forgery on July 1, 1960. Appellant pleaded not guilty and after a jury trial was found guilty as follows: Count 1 of conspiracy as charged; Count 3 of robbery in the first degree; it was further found that at the time of the commission of the offense he was armed; Count 4 of robbery in the first degree; and it was further found that at the time of the commission of the offense he was armed.

A résumé of related facts is as follows: The appellant, using the name Jeffrey Jones, did on June 19, 1960, rent a 1960 Thunderbird convertible automobile from a car rental service at one of the airports. That car was returned on June 20, 1960, and appellant then rented a 1959 Chevrolet Corvette which was returned June 21. On June 21 he rented a black Ford Thunderbird and returned it on June 23. On June 23 he rented a Chevrolet Corvette convertible and returned it on June 24. On June 24 he rented a 1959 Ford Thunderbird and returned it on June 30. On June 30 he rented a 1959 gray Chevrolet Impala. The latter car was not returned by the appellant but was later picked up in Arizona after information was supplied to the car rental service by the police. The man in charge of the rental service recognized the appellant and further recognized one of the codefendants as the person or persons who rented the heretofore described cars. The appellant and the codefendants are Negroes.

On June 26, 1960, Kelly Key was in his grocery store on South San Pedro Street. The appellant entered the store and purchased a money order and then left. About five minutes later Tarleton and Ellington entered the store and Tarleton, with a gun in his hand, ordered Key to the back of the store. Ellington stood near the meat counter with a gun in his hand and shortly thereafter took the money out of the cash register. Key was bound with tape but broke loose, secured his gun and shot at Ellington who, however, outdistanced him. Kelly Key identified the appellant as the man who had entered his store and purchased a money order and the two codefendants as the men who had robbed him very shortly thereafter. He also identified certain guns found in the possession of the defendants.

A Mr. Robinson lived around the corner from the Key store and he saw a 1959 Thunderbird automobile in front of his home on June 26, 1960. Four Negro men were in the car; two of them got out and went toward the store on South San Pedro Street and the car was then driven off in the opposite direction.

Later Robinson saw a man running from South San Pedro Street toward Avalon Street.

On about June 27, 1960, Abraham Gutmann was working at Joe's Liquor Store on South Figueroa Street. Tarleton entered the store and left. Shortly afterward he returned with Gastin. At gun point Tarleton directed Gutmann to open the cash register and Gastin took the money therefrom.

Briscoe, a coemployee of Gutmann, was putting beer in the cooler and saw Gastin and Tarleton with guns in hand and he signaled an alarm.

On July 1, 1960, Lena Like operated a clothing store on West 54th Street in Los Angeles. She saw Ellington and Tarleton enter the store and Tarleton asked for a $2.00 money order. The money order was made out; Tarleton thereupon pulled out a gun and ordered Lena Like to give to him her money and the money orders which she possessed, and then directed that she go to the back of the store.

Mrs. Flores, an employee in the Like store, saw Ellington and Tarleton enter the store and as Tarleton asked for the money orders Ellington went toward her with a gun in hand.

A service station employee at a service station close to 54th and Hoover Streets, near the Like store, saw appellant park a 1959 Chevrolet automobile in the alley behind the store about noontime on July 1 and the attendant also saw Ellington and Tarleton run out of the store with money and papers in their hands towards the parked car. When Ellington and Tarleton got into the car it sped off.

Later in the day of July 1, 1960, appellant presented a money order made out in the name of Jeffrey Jones, Jr., to Walter Becker, Jr., an assistant manager at Ralph's Market on Hollywood Boulevard. Appellant wrote out the name Jeffrey Jones, Jr., in Becker's presence and presented a driver's license bearing the same name. Becker asked the appellant to follow him upstairs to the office and after starting to follow, appellant turned and ran out of the store. Becker chased and caught appellant.

Appellant was arrested by the police and he gave his name as Jeffrey Jones, Jr., and showed a driver's license bearing that name. The police called a telephone number and the man who answered stated that his name was Jeffrey Jones, Jr. Appellant then stated that his name was Robert Jennings. The hotel key which appellant had in his possession fitted a room registered to a person named "Sugar." Appellant stated

that he had won the money order in a crap game. Upon a check of appellant's fingerprints he revealed his true name.

On July 4, 1960, Gastin was arrested and questioned by the officers. Gastin told the officers he had been in the liquor store holdup on Figueroa Street; that the participants had used guns and had taken about $45. Appellant was placed in a room with Gastin and was told that Gastin had signed a statement. The officers listened to the talk between appellant and Gastin. The officers stated in testimony that Gastin told appellant that he had admitted his part in the robbery and that he hoped appellant would not consider him to be a squealer. Appellant afterward was asked by the officers if he had anything to say after talking with Gastin. Appellant first remained silent; after being told that Gastin had written a statement to the effect that appellant had supplied the guns and was the driver of the automobile, he stated that he had nothing to say. Appellant, at another time when asked to explain Gastin's statement and the fact that persons jailed in Arizona had stated that appellant was driving the car in the holdups, told the police, ''Well, what if I say I was driving the car on those nights the holdups occurred and the guys were in the car but I didn't know they were going to hold these places up.'' The officer related that the appellant had talked about the cars he had rented from the man at the airport, further he had talked about how certain cars were used in holdups and then returned if they had not been spotted in the various holdups and further about how guns were made available for certain robberies. When asked to talk still further the appellant answered by saying, ''Well, if and when I start talking, you will have me sewed up so tight I will never get out of the place.'' Appellant expressed surprise when told of the small amount of money which was recovered in Arizona in the Chevrolet Impala car and said in part, ''Well, I had $197.00 that I put in the glove compartment of that car that I was supposed to use to put my wife in the hospital so she could have the baby.''

On July 14, 1960, two officers interviewed Tarleton and Ellington and another person at the sheriff's office in Kingman, Arizona. The officers took from the men a box of ammunition, a small automatic pistol, a clip and some cash. The gun was used in the clothing store holdup. A money order was removed from Tarleton's property and he identified it as having been taken in a holdup in Los Angeles. Mrs. Like identified it as one of the orders taken from her store. When returned to

Los Angeles the men directed the officers to a place where they found additional money orders and a document written to ''Roberts'' and a gun with clip and bullets.

Jones testified that he had worked out in a gymnasium with appellant in the summer of 1960 and had lost his identification. He had not given appellant permission to use any identification of his and the signature on the money order presented to Ralph's Market was not his.

Appellant now contends:

1. That only circumstantial evidence was introduced against him.

2. That he was erroneously convicted of robbery when he was never found with any weapons, and no one ever stated he robbed them or that he was seen with any weapons.

3. That he was denied a speedy trial.

4. That he was poorly represented by counsel.

5. That he did not receive a trial by an impartial jury.

6. That there was no truth in the testimony of some witnesses and that their testimony was inconsistent.

We find no merit to any of appellant's assertions.

■ A conspiracy is established when it is shown that there was an agreement between two or more persons to commit a crime and that an act was done in California to effect the object of the agreement. (*People* v. *Buffum*, 40 Cal.2d 709-715 [256 P.2d 317].) ■ ■ A conspiracy may be established by circumstantial evidence and no definite agreement need be shown as long as the parties positively or tacitly come to a mutual understanding to accomplish the unlawful design. (*People* v. *Calhoun*, 50 Cal.2d 137, 144 [323 P.2d 427]; *People* v. *Massey*, 151 Cal.App.2d 623, 651-652 [312 P.2d 365]; *People* v. *Means*, 179 Cal.App.2d 72, 81-82 [3 Cal.Rptr. 591].)

■ The evidence in this case is sufficient to substantiate a verdict of guilty of conspiracy as charged.

[■■ As to robbery counts three and four it was not necessary to establish that appellant personally wielded a gun, made an entry and physically took the money or property away from any of the victims. We believe that the evidence in this case is such that the jury could properly draw the inference that appellant was a participant in the legal sense in the armed robberies herein mentioned, even though he only furnished the guns to his codefendants and drove the car to get the codefendants to and from the places to be robbed.

With reference to the count having to do with forgery— appellant makes no claim in his brief to this court with refer-

ence thereto. The evidence however, is clear that appellant was guilty as charged. Section 31 of the Penal Code reads as follows:

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

It is apparent that appellant properly could have been found to be armed at the time of the robberies. (See *People* v. *Stevens*, 32 Cal.App.2d 666, 669 [90 P.2d 595]; *People* v. *Eddy*, 123 Cal.App.2d 826, 831 [268 P.2d 47]; *People* v. *Silva*, 143 Cal.App.2d 162, 169 [300 P.2d 25].)

[■■] Appellant at no time during the trial or prior thereto made any claim that he was denied the right to a speedy trial. The contention with reference thereto is raised improperly for the first time on appeal. (*People* v. *Jordan*, 45 Cal.2d 697, 708 [290 P.2d 484]; *People* v. *Ragsdale*, 177 Cal.App.2d 676, 678 [2 Cal.Rptr. 640].) Appellant's failure to object at the proper time was in effect a consent to the procedure which was followed. See Penal Code section 1382. (*People* v. *O'Leary*, 130 Cal.App.2d 430, 436 [278 P.2d 933]; *People* v. *Bruce*, 141 Cal.App.2d 854, 856 [297 P.2d 437]; *People* v. *Romero*, 13 Cal.App.2d 667, 671-672 [57 P.2d 557].) If there was any delay in the prosecution of the case it was self-imposed.

Appellant's counsel was diligent, and considering the tools and the facts with which he had to work he did a commendable piece of work. No complaint about counsel was made during the trial and had there been such it would have been unjustified. (See *People* v. *Ruiz*, 103 Cal.App.2d 146, 149 [229 P.2d 73]; *People* v. *Watts*, 126 Cal.App.2d 659, 662 [272 P.2d 814]; *People* v. *Delasantos*, 172 Cal.App.2d 213, 217 [342 P.2d 69].)

Appellant has produced nothing to support his statement to the effect that the jury was not impartial. The record indicates that the entire trial was fair, that the judge and jury were impartial, and further that proper verdicts were rendered. (See *People* v. *Montez*, 175 Cal.App.2d 303 [345 P.2d 938].)

[■■] Lastly, appellant contends that the witnesses did not tell the truth. The jury and the judge observed the witnesses and heard the testimony and quite apparently believed what the witnesses for the prosecution said. We cannot substitute our judgment for theirs. (*People* v. *Mullins*, 145 Cal.App.2d

667, 670 [303 P.2d 58]; *People* v. *Williams,* 150 Cal.App.2d 171, 176 [309 P.2d 525].)

It is interesting to note that the appellant saw fit not to testify in his own behalf with reference to any of the matters about which he now complains.

We have read the record in this case and there can be no question that the appellant received a fair and proper trial and the evidence was amply sufficient to support the charges of which he was convicted.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.