[Crim. No. 5409.   First Dist., Div. One.   Jan. 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MURRAY, Defendant and Appellant.

James Murray, in pro. per., and Terry A. Francois, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—Defendant James Murray appeals from a judgment imposing sentence for violation of Penal Code section 4530, subdivision (b), relating to escape from a state prison. He had entered the single plea of not guilty by reason of insanity, and thus pursuant to Penal Code section 1016, admitted the commission of the offense charged. The case was

prosecuted by way of a preliminary examination and information.

The facts, which are undisputed, show that on April 16, 1965, the defendant was under commitment in the state prison at the Black Mountain Conservation Camp and that he left that camp without authorization in the early evening of that date. The defendant then took a 1957 Chevrolet automobile belonging to Mr. Theseus Canelis without his permission and was later, following a chase culminating in a two-car collision, apprehended.

The foregoing facts were elicited at a preliminary hearing, the sole issue at the trial itself being that of the defendant's sanity. Murray's contention was that he had consumed a quantity of liquor and had concurrently taken some eight "goofballs" and that this combination had so affected his mind that he did not realize what he was doing. These contentions are best exemplified by his own testimony: "I escaped because I was not in my right state of mind at the time. My mind was confused. I had had these narcotics and I was not in my right state of mind." We assume that defendant attempted to present a defense predicated upon involuntary intoxication. Under Penal Code section 26 subdivision Three lunatics and insane persons are incapable of committing crimes—and while voluntary intoxication is no defense (Pen. Code, § 22; see Perkins, Criminal Law, pp. 787-794; 1 Witkin, Cal. Crimes (1963) § 143, p. 136) the defendant's testimony, if believed, would establish that he was not a habitual user of either alcohol or narcotics and that he had not previously taken both alcohol and "goofballs" in tandem so as to be familiar with the possible effect. Thus involuntary intoxication—which may be treated the same as insanity. (See *People* v. *Fellows* (1898) 122 Cal. 233 [54 P. 830]; *People* v. *Hower* (1907) 151 Cal. 638 [91 P. 507]; *People* v. *Wells* (1949) 33 Cal.2d 330 [202 P.2d 53]; *People* v. *Lim Dum Dong* (1938) 26 Cal.App.2d 135 [78 P.2d 1026]; Perkins, *op. cit. supra*, p. 787.)

Several claims of error are made. First it is contended that since the information was filed sixteen days after he had been held to answer, the trial court erred in not dismissing the cause under Penal Code section 1382, subdivision 1. The record indicates that this late filing date was specifically requested by defendant's counsel for his convenience, and that defendant personally agreed to the date. ■ Speedy trial rights under Penal Code section 1382 may be waived.

(*People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452].) ■ Furthermore, this point was not raised in the court below. It may not now be considered on appeal. (*People* v. *Roberts* (1961) 197 Cal.App.2d 354 [17 Cal.Rptr. 162].)

Secondly, defendant who at the trial was already serving a term in the state prison, now seeks to take advantage of the rule of Penal Code section 1381 requiring such a prisoner to be tried on a pending charge within 90 days after written demand therefor. Here again the point was not raised in the court below and the rule of *People* v. *Roberts, supra,* 197 Cal.App.2d 354, applies. Additionally the record shows no written demand to have been made, and in fact defendant's case was brought to trial within 90 days after the filing of the complaint and 33 days after the filing of the information.

■ Next, error is asserted because of the claimed failure of the court to advise defendant, or to determine that he was advised, as to the effect of a plea of not guilty by reason of insanity, i.e., that it constitutes an admission of the offense charged. (Pen. Code, § 1016.) The record reveals the following statement by the trial judge, in the presence of the defendant, when advising prospective jurors as to the nature of the case: "Now the defendant has entered the sole plea to this Information of not guilty by reason of insanity. Now that means this: that when a person enters the sole plea of not guilty by reason of insanity, *he admits the commission of both offenses*[1] charged but claims that he is not guilty of them by reason of insanity." (Italics added.) The record discloses no attempt to amend or set aside the plea following this statement.

A similar contention was made in *People* v. *Walker* (1948) 33 Cal.2d 250, 263-264 [201 P.2d 6], where the court said: "Without deciding whether it is necessary for the court to advise defendant of the consequences of a single plea of not guilty by reason of insanity (see, generally on subject of advising the defendant as to the consequence of his plea, *People* v. *Mendez* (1945) 27 Cal.2d 20 [161 P.2d 929]; 110 A.L.R. 228), it should be observed that here the defendant was represented by counsel and he personally made his plea. While the minutes at the time the plea was taken do not show that he was advised that a plea of not guilty by reason of insanity

[1]The second offense was Vehicle Code section 10851 as to which, because of the multiple prosecutions rule (Witkin, Cal. Crimes (1963) 948 et seq.), the judgment was not pronounced.

would result in an admission of the commission of the offense, the court stated that it had so advised defendant at the outset of the trial and fully warned defendant at that time as seen from the above quoted excerpt. He and his counsel had full opportunity at that time to request a change in the plea." (See also *People* v. *Wein* (1958) 50 Cal.2d 383, 409 [326 P.2d 457] ; *People* v. *Martinez* (1957) 154 Cal.App.2d 233, 238 [316 P.2d 14].)

Additionally, we note that defendant nowhere, in his briefs or otherwise, makes claim that he did not in fact understand the consequences of his plea. We find no merit in this contention.

▄▄ Error is claimed from the trial court's ruling that one Milton Krier, described as a jail inmate, did not qualify as an expert witness on narcotics and narcotics behavior.

A formal offer of proof was made outside the hearing of the jury and was rejected. It was stipulated that Krier was not a medical doctor nor had he "had any college training in the field of narcotics, pharmacology, or the like." Krier testified that he had been a psychiatric technician in several hospitals and that he had received some formalized training in this respect. In ruling him unqualified the trial court stated, "In my opinion, he would have to be either a doctor or a toxicologist in order to give an opinion to the effect of a narcotic upon the human body or even the effects of alcohol upon the human body."

We may assume that the proffered testimony was to lend support to the defendant's theory that the combination of alcohol and drugs which he had allegedly taken had caused an unexpected and untoward effect upon his mind thereby causing the escape and auto theft. The record is unclear as to exactly what form of drug the defendant allegedly took. All of the witnesses were examined to some extent on this subject and, to be more specific, on the possible effect of the drug Mellaril on the defendant. Perhaps the best description of this drug was given by the defense expert, Dr. Barbour. He stated: "Mellaril which he mentioned is a Phenothyzine derivative and it is a tranquilizing drug that acts on the layers of the brain below the cortex where thinking occurs, and it is supposed to act as a tranquilizer of the mid-brain and the four primitive actions of human beings." He stated that a combination of tranquilizing drugs and alcohol could result in an acute toxic psychosis which is characterized by a

confusion of the mentality, inability to think straight, halluci-
nations and a detachment from reality.

The defendant concedes, as he must, that the trial court
enjoys considerable latitude in ruling upon the qualification
of an expert. ▬ It is almost the universal rule strongly
supported by both cases and learned treatises, that the trial
court must be left to determine the qualifications of an expert
(*Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 476 [234 P.2d
34, 29 A.L.R.2d 485] ; *People* v. *Busch* (1961) 56 Cal.2d 868,
878 [16 Cal.Rptr. 898, 366 P.2d 314] ; *Rudat* v. *Carithers*
(1934) 137 Cal.App. 92, 97 [30 P.2d 435] ; *Risley* v. *Lenwell*
(1954) 129 Cal.App.2d 608, 634 [277 P.2d 897] ; *People* v.
*Thomsen* (1965) 239 Cal.App.2d 84, 91-92 [48 Cal.Rptr. 455] ;
2 Wigmore, Evidence, § 561, pp. 641-644; McCormick, Evi-
dence, § 13, pp. 28-29; Witkin, Cal. Evidence (2d ed. 1966)
§ 1175, p. 1088) and this determination will seldom, in the
absence of a clear abuse of discretion, be reversed on appeal.
(*People* v. *Goldsworthy* (1900) 130 Cal. 600, 605 [62 P. 1074]
(fact that appellate court, if deciding a question as to qualifi-
cation of expert, may have allowed him to testify is not the
test for determining whether court abused discretion in rejec-
tion of testimony) ; *Huffman* v. *Lindquist, supra,* 37 Cal.2d
465; *Risley* v. *Lenwell, supra,* 129 Cal.App.2d 608; *Sozzi* v.
*Gull* (1963) 218 Cal.App.2d 231, 235 [32 Cal.Rptr. 221].)

▬ The able trial judge in this case concluded that
Krier was not a sufficiently qualified expert to testify upon
what the People (seemingly correctly) term an issue of extra-
ordinary complexity requiring a sophisticated knowledge of
pharmacology, toxicology and psychology. We cannot say that
his conclusion constitutes an abuse of discretion.

▬ Error is assigned in permitting the prosecution to
examine its experts regarding defendant's religious beliefs
and in permitting defendant to be cross-examined on the same
subject. This so-called error was not pointed out or objected to
in the court below.

As stated, defendant's defense was that he was legally
insane at the time of his alleged offenses because of his
reaction to alcohol and drugs. The court-appointed alienists
testified that in their opinion defendant was not at the time of
the alleged offenses under the influence of alcohol, or narcotics
or a combination of both. This opinion was based in part on
the statement made to them by defendant that because of his
Muslim beliefs he had a perfect right to do what he was

charged with doing. These beliefs obviously were related and relevant to the issue of insanity, and the evidence thereof was offered and admitted only on this issue. The complained of cross-examination of defendant related to the same subject matter—whether he had made the statements to the alienists that his Muslim faith justified his crimes. This cross-examination was proper, defendant having himself given testimony as to his mental condition at the time of the alleged offenses. It was within the scope of defendant's direct examination (Code Civ. Proc., § 2045) and it was proper impeachment as to prior inconsistent statements. (Code Civ. Proc., § 2052; see also *People* v. *Cavanaugh* (1955) 44 Cal.2d 252, 266 [282 P.2d 53]; *People* v. *Raucho* (1935) 8 Cal.App.2d 655, 668-669 [47 P.2d 1108]; *People* v. *Campos* (1935) 10 Cal.App.2d 310, 316-317 [52 P.2d 251]; *Jones* v. *Bayley* (1942) 49 Cal.App.2d 647, 661 [122 P.2d 293]; Witkin, Cal. Evidence (2d ed. 1966) § 1249, p. 1151.)

Misconduct of the prosecution is claimed. This assertion is based upon the cross-examination of the defendant as to his Muslim faith. We have previously considered the propriety of the cross-examination and find no merit in this contention.

Defendant's final contention before us is that he was not adequately represented by counsel. In order to justify relief on the ground of inadequate representation of counsel an extreme case, virtually reducing the trial to a sham, must be shown. (*People* v. *Reeves* (1966) 64 Cal.2d 766 [51 Cal. Rptr. 691, 415 P.2d 35]; *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]; cf. *In re Rose* (1965) 62 Cal.2d 384 [42 Cal.Rptr. 236, 398 P.2d 428].) There was no such lack of competence or diligence here as to reduce the trial to a sham and a farce; the defendant was adequately represented. Certainly the pertinent constitutional standards were met. (See *Adams* v. *United States* (1942) 317 U.S. 269 [87 L.Ed. 268, 63 S.Ct. 236, 143 A.L.R. 435]; *People* v *Reeves, supra*; *People* v. *Ibarra, supra*.)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 15, 1967.