[Crim. No. 7349. Second Dist., Div. One. Sept. 1, 1961.]

THE PEOPLE, Respondent, v. WENDELL DEAN ALLEN, Appellant.

Wendell Dean Allen, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD, P. J.—In count 1 of an information defendant Allen was accused of petty theft (committed on December 12,

1959) with a prior conviction of burglary. In count 2 defendants Allen and Smith were accused of petty theft (committed on January 15, 1960) with a prior conviction of burglary as to Allen, and with a prior conviction of petty theft as to Smith. It was alleged further therein that Allen also had been convicted of two other felonies (forgery and escape). Trial by jury was waived. By stipulation the case of the People was submitted on the transcript of the preliminary examination. Neither defendant testified. Each defendant was found guilty as charged. The allegations as to prior convictions of Allen were found to be true. Motions for a new trial were denied.

The court also revoked an order wherein Allen had been granted probation upon the prior conviction of escape.

Allen's notice of appeal will be regarded as a notice of appeal from the judgment and the order denying his motion for a new trial.

Allen also appeals from the order revoking probation.

(Smith filed a notice of appeal, but his appeal has been dismissed for failure to file an opening brief.)

Appellant Allen contends (1) that the evidence was insufficient to support the judgment; and (2) he was denied due process of law in that he was improperly persuaded by his counsel, a deputy public defender, to waive a jury trial and to submit the case on the transcript of the preliminary examination.

On December 12, 1959, while Jettie Jones was coming out of the train station in Los Angeles, the appellant approached him, exhibited a card with an address on it, and asked Jones if he knew the location of that address. At that time appellant was using a foreign accent. Jones replied that he did not know about it. Appellant said that a girl had just "beat" him out of $20 and she was supposed to be at that address. Then appellant asked a man, who was walking nearby, if he knew the location of the address. The other man said he was in a hurry, and that he did not know the address. Appellant "pulled out a roll of money," and asked the other man if he knew where appellant could find a white girl. (As will be shown later, the other man and appellant were confederates in committing theft by trick and device. The other man, whose name is not disclosed, will be referred to as "X.") X told appellant that he should not show money like that, and he should be glad he had met two guys like Jones and himself because other persons would probably "get" him.

Appellant said he had just come off the boat, and his captain had told him that no one would bother him "around here." Appellant made statements to the effect that his captain had told him that the Negroes do not work "here in the United States." X, after replying, "Yes, we all work," pulled out a roll of money. Then Jones (victim), after pulling out some money, said, "Yes, we all work here. . . . We all have money." Appellant said that if the other fellows would locate a white girl for him he would give them 35 pounds each (apparently he used the word "pounds" in place of the word "dollars").

The three men entered a 1955 Buick car, and X drove several blocks, stopped the car, and said this was the place. Appellant said he would give $1,200 to the girl. X got out of the car and asked Jones to go with him. While they were back of the car, X told Jones that they should not let appellant give his money to the girl, but they should get it from him in a dice game by using "crooked" dice—that the dice would win every time. They returned to the front seat of the car and proceeded with a game of dice—while appellant remained in the rear seat. Appellant said he liked that game. After X won the first roll of the dice, he asked Jones to give him $50. Jones handed the money to X, and thereafter while appellant was looking in another direction, X gave the money back to Jones. After X won in the second roll of the dice, he produced a blank check and told Jones to fill it out and sign it. Jones wrote and signed the check for $200, payable to "Cash." He testified that he wrote it, pursuant to the suggestion of X, in order to show appellant "how we pay off in checks" in the United States. Jones handed the check and $100 to X, and Jones rolled the dice and lost. Thereupon, the appellant grabbed the check and $100 from X's hand, and said that he would return the money if they would buy a drink for him. Appellant went into a nearby liquor store. Then X said he would go into the liquor store and see what happened to "the guy that took our money." After X had entered the store, he ran back to the car and told Jones that appellant was calling the police, and that he (X) did not want appellant to get his license number, and he was going to take Jones away from the place. X drove away hurriedly and, after going several blocks, told Jones to get out of the car. Jones complied with that order, and then X drove away. Jones asked another person, who was driving an automobile, to take him to the liquor store. When that person and Jones arrived at the store,

X had returned there and appellant was getting into X's car. Jones ran to X's car, entered it, and demanded his money. While X was driving the car away, the appellant returned the $100 to Jones. X told appellant not to return the money. Thereupon, appellant grabbed the money again and took it away from Jones. By that time appellant was not using the "foreign accent." The car in which Jones had returned to the liquor store was following X's car. Appellant told Jones that if he would have the "car stop trailing" them he would give the money back to Jones. Then Jones waved to the man who was following them, and the man went away. Appellant said that Jones had written a check that was no good and that they were going to take him to the police station. When they were near the police station, appellant gave Jones $50 and threatened him with a knife. Appellant said that he does this all the time. Then Jones got out of the car, and the car went away. Jones went to the police station and reported the incident.

On January 15, 1960, while Nathaniel Allen was in a line at a stamps window of a Post Office, appellant approached him, exhibited a card with an address on it, and using a foreign accent, asked Allen if he knew the location of the address. Allen (victim) replied there was no such address. The address was the same address as that which was on the card in the Jones incident of December 12. The appellant asked a man, defendant Smith, who was walking nearby, if he knew the location of the address. Smith said he was in a hurry, but he would look at the card. He said there is no such address and that the appellant "has been taken." After the three men had talked a while about appellant's alleged situation—that he had just come from a boat, he did not know anything about this country, and a girl had taken some of his money, Smith and Allen (victim) decided that they would help appellant find another girl. The three men entered a 1955 Buick car, and Smith drove away. While they were traveling, appellant said that his captain on the ship had told him that the Negro did not work in America. Smith said that was not correct, that everyone worked here, and everyone had money. Then Smith and Allen (victim) displayed money in order to assure appellant that they worked. Appellant, after saying that he had a lot of money, pulled out a large "roll" of something that appeared to be money. After Smith had driven several blocks, he stopped the car and said this was the place. Smith told appellant to stay in the car while

Smith and Allen went to see if everything was all right. When they were about 50 feet from the car, Smith said that appellant had a lot of money and that they should get some of it, in a dice game, before appellant went into the house. They returned to the front seat of the car and proceeded with a game of dice—while appellant remained in the rear seat. Smith rolled the dice and won. Allen gave him $5.00, but Smith returned it while appellant was looking in another direction. Smith won the second game, received $20 from Allen, and secretly returned it to him. Appellant said they were playing for small money, and that he could not gamble that way. Smith said the next bet would be for $150. He produced a blank check and told Allen to write a check for that amount. Smith said that "we pay off in checks" and that is "the way we do business in America." The check for $150, payable to "Cash," was signed by Allen. Then Allen put the check and $139 on the front seat of the car. After Allen rolled the dice, appellant grabbed the money, and said he would return it if they would buy a drink for him. Smith drove to a liquor store, and appellant entered it. Appellant returned to the car and said that the store man was calling the police because the check was no good. Smith entered the store, and returned to the car and said that appellant had called the police, and that they (Smith and Allen) would have to leave quickly. After Smith had driven several blocks from that place, he let Allen get out of the car. Allen obtained the license number of the car. Soon thereafter he went to the police station and reported the incident.

Officer Dollinger testified that the 1955 Buick involved here was listed as a car that was "wanted" by the police; on January 16, 1960, about 2 p. m., he observed the car as it was being driven near 12th Street and Central Avenue; then he and another officer stopped the car; appellant Allen had been driving the car, and defendant Smith was also in the front seat; the officers arrested appellant and Smith; they (officers) found Exhibit 3 (roll of "stage" or "phony" money) under the right front seat of the car; they found a $1,000 bill of such money (part of Exhibit 3) "on Smith"; they found Exhibit 4 (the check for $150) in Allen's wallet.

Officer Volz testified that Exhibit 1 (card with address on it) and Exhibit 2 (piece of paper with same address on it) were removed from the personal property of appellant at the police station; on January 18, 1960, he and another officer

had a conversation with Allen and Smith; he (witness) asked them if they had ever seen Nathaniel Allen, who was then standing about 10 feet from them; appellant Allen replied, "Yes, that is the chump we took in a crap game. We didn't steal his money from him"; Smith replied, "We got his money in a crap game."

"Larceny by trick and device is the appropriation of property, the possession of which was fraudulently acquired; . . ." (*People* v. *Ashley,* 42 Cal.2d 246, 258 [267 P.2d 271].)

In the present case the evidence shows that the scheme which appellant used in taking money from Jones was similar, in practically all respects, to the scheme he used in taking money from Allen. Each victim was asked the location of the same address, and each one was persuaded to ride in the Buick for the same purpose. The statements and acts of appellant and the third persons (X and Smith), which were calculated to cause each victim to disclose whether he had money, were the same in both instances, namely, the statements that Negroes do not work, and the acts of displaying alleged money. In each instance a third person induced the victim to place some of his money where appellant could grab it, namely, in a dice game. Each victim was persuaded to sign a check, as a pretext for the later act of appellant in purporting to call the police so that the driver of the Buick might hurriedly take the victim away from appellant who had the victim's money. Nathaniel Allen testified that the roll of phony money which was found in the Buick was similar to the roll which appellant had displayed. The $150 check, which was found in appellant's wallet, was identified by Allen as the check he signed. The card and the piece of paper with said address thereon, which were found in appellant's wallet, were identified by the victims as the card and paper which appellant showed to them.

The evidence was sufficient to support the findings that appellant was guilty of petty theft on both counts.

It was established that appellant had been convicted previously (on June 11, 1952) of burglary.

The evidence was also sufficient to support the findings that the allegations as to additional prior convictions (of forgery and escape) were true.

The evidence was sufficient to support the judgment.

Appellant contends further that his counsel, a deputy public defender, improperly persuaded him to waive a jury trial and to submit the case on the transcript of the prelimi-

nary examination. After the deputy had made a motion for a new trial, and the motion had been denied, the appellant stated (1) that his original request to the deputy was that there be a trial by jury and that he (appellant) testify at the trial; and (2) that appellant felt that the deputy used undue persuasion in getting him to agree to submit the case on the transcript. There is nothing in the record to substantiate appellant's assertion with respect to improper or undue persuasion; nor is there anything in the record to substantiate appellant's assertion to the effect that the deputy did not advise him properly. It appears that appellant was represented very ably by the deputy public defender. This contention is not sustainable.

 Appellant also contends that witnesses Jones and Allen were impeached. His argument is to the effect the witnesses were unreliable because they were attempting to help appellant find a girl, they admitted they were gambling, and they admitted they wrote the checks without having an account in the bank. The argument relates to the weight and credibility of the testimony, which were matters for the determination of the trial judge. (See *People* v. *Williams,* 150 Cal. App.2d 171, 176 [309 P.2d 525].)

 As above stated, this defendant Allen has appealed also from an order revoking probation in Superior Court case No. 206049, wherein defendant had pleaded guilty to a charge of "Escape from Custody of Officer," a felony. A probation officer's report was filed in the present case, wherein defendant Allen was convicted of "Petty Theft with a Prior Conviction of a Felony, to-wit, Burglary." On the basis of the conviction in the present case and the probation officer's report, the trial court could conclude properly that appellant had violated the terms of probation. (See *People* v. *Yarter,* 138 Cal.App.2d 803 [292 P.2d 649].)

The judgment and the order revoking probation are affirmed.

Fourt, J., and Lillie, J., concurred.