### RICHARD DONALD MORRIS *v.* STATE OF MARYLAND

[No. 67, September Term, 1970.]

*Decided January 25, 1971.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, THOMPSON, MOYLAN, and POW-ERS, JJ.

*Karl G. Feissner*, with whom were *William L. Kaplan*,

*Thomas P. Smith, Fred R. Joseph,* and *Andrew E. Greenwald* on the brief, for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The problem in this case arose because Richard Donald Morris, appellant, and the State were in salient agreement on two important issues—that appellant was competent to stand trial, Code, Art. 59, § 7,[1] and that he was not responsible for the criminal conduct of which he was charged because he was insane at the time of the commission of the alleged crimes, Code, Art. 59, § 9 (a). He was charged with rape and, as is customary, the lesser offenses relating thereto, assault with intent to rape and assault and battery, and made, in writing, a general plea of not guilty, Maryland Rule 720, and sufficiently, although not technically correctly, a plea that he was insane at time of the commission of the alleged crime. Code, Art. 59, § 9 (b). *Sweeney v. State,* 6 Md. App. 431, 439. Pursuant to § 9 (b), the Circuit Court for Montgomery County ordered an examination of him by the Department of Mental Hygiene, and as required by § 10, a report of the examination by the Clifton T. Perkins State Hospital was forwarded to the court. It stated that it was the unanimous opinion of the Superintendent and Medical Staff of that hospital that appellant was competent to stand trial within the meaning of § 7 and insane at the time of the commission of the alleged crime within the meaning of § 9 (a). The State was satisfied with these determinations and filed a written confession of not guilty

---

1. Unless otherwise stated, references to Code, Art. 59 are as it was under the title "Lunatics and Insane" before its repeal and enactment under the title "Mental Hygiene" by ch. 407, Acts 1970, effective 1 July 1970.

by reason of insanity, asking the court to commit appellant to the Clifton T. Perkins State Hospital, "there to remain until released by due process of law." Code, Art. 59, §§ 11 and 12.[2] Appellant had no quarrel with the determinations that he was competent to stand trial and insane at the time of the alleged crime but he opposed, in a writing duly filed, "any action by the court in entering a judgment of not guilty by reason of insanity until such time as it should appear, beyond a reasonable doubt that there was, in fact, a crime committed." He asserted, "the plea as suggested by the State, presupposes guilt on the Defendant and such is properly not the case." He stated that he was, "in fact, not guilty of the offenses charged and until such time as the State should prove beyond a reasonable doubt that he is guilty of the charge of the offense of rape, the State could not, nor could the Defendant, properly seek to enter a finding of not guilty by reason of insanity without a trial." He pointed out, "While it is apparent that the Defendant was mentally ill, at the time in question, nowhere does it appear that this claim of rape took place and the evidence may indicate to the contrary."

There was a hearing on the motion and answer in the Circuit Court for Montgomery County. Appellant's counsel argued that the plea of insanity was an alternative defense. He said, "Now, clearly, the man is not guilty of rape as we stand here today, and we are going on to the issue of consent that there was no lack of consent on the part of the lady that was involved * * * [A] crime was not committed because the lady consented. We have her statement." He summed it up, "Until such time as the State of Maryland establishes a crime is committed, they cannot take people off the street and charge them with a crime and then confess a plea of not guilty by reason of

---

2. In the report of examination it was stated that the feeling of the Staff was that appellant "might best be managed by being retained in the Hospital until the date of his trial" and it was recommended that "should Mr. Morris be found Not Guilty by Reason of Insanity, he should be remanded to our hospital for his continued treatment and rehabilitation."

insanity and place them in a State institution without proof they did something wrong. This is not a civil commitment * * *." The Assistant State's Attorney said he had not seen a statement by the girl that she consented. He had gone over the case with the complaining witness and her husband, "a part-time preacher," and "I know I have never heard anything more about consent than the man in the moon." Then the prosecutor said that even if the girl said she consented "nothing changes the law about what has happened. You see, there is a charge; the man has a mental problem. * * * He is not guilty under any conditions, whether he did it or whether he is insane * * * He never had the mental requisite, the intent to commit the crime alleged." The court said it would take the case under advisement. It invited counsel to chambers, saying:

> "If what he says is true, you have a man here charged with rape and she says herself he didn't rape her. I don't know how in the world you got a case. Insanity is something else. We can take care of him if he is insane."

The record does not disclose what occurred in chambers but on the same day as the hearing the docket entries read that the court ordered that "the State's confession of not guilty by reason of insanity be and is hereby accepted and entered." And on the same day the court passed an order that appellant be committed to the Clifton T. Perkins State Hospital and be there confined until he shall have recovered his reason and be discharged by due course of law.[3] Shortly thereafter the court filed an opinion. After setting out the factual posture leading to the State's confession the court said:

> "The ground for the defendant's opposition to the State's Confession of the Plea is that in addition to being not guilty by reason of insanity

---

3. We are informed by appellant's counsel that appellant has been transferred to Springfield State Hospital.

he is not guilty in that he has a defense, i.e., that the victim consented. It being the court's view that the ingredients of specific criminal intent is absent by virtue of his insanity at the time of the alleged commission of the crime, and that even in the event he went to trial and was acquitted upon the ground of consent such an acquittal for that reason would be tantamount to lack of proof of the element of specific criminal intent. For the foregoing reasons the court ordered that the State's Confession of Not Guilty by Reason of Insanity be accepted."

Appellant entered a timely appeal from the order accepting the State's confession of not guilty by reason of insanity and entering the verdict. The State has moved that we dismiss the appeal on the ground that no appeal lies from a verdict of not guilty. We deny the motion. The action of the trial court was no ordinary finding of not guilty on which a defendant walks out of court a free agent. It was a final disposition of the criminal proceeding against appellant and its effect, no matter what the form, was to restrain the liberty of him. Even if it was not within the letter of Code, Art. 5, § 12, we feel it was sufficiently within the meaning of the statute as construed from time to time by judicial opinions to enable us to review it. See *Buckner, et al. v. State,* 11 Md. App. (1971). We entertain the appeal.

The reasoning underlying the court's action, as evidenced by its opinion, was that appellant could not have the requisite intent to commit a criminal act if he was insane [4] and "even in the event he went to trial and was acquitted upon the ground of consent such an acquittal for that reason would be tantamount to lack of proof of the element of specific criminal intent." Of course, if it was established that the woman, whom appellant carnally

---

4. What Code, Art. 59, § 9 (a) provides is that one who commits a crime while insane cannot be held responsible for his criminal conduct.

knew, being of the age of consent, legally consented to the act of intercourse, there was no rape committed. Force is an essential element of the crime of rape; consent to the act, however reluctantly given, at any time prior to penetration deprives the subsequent intercourse of its criminal character. *Hazel v. State,* 221 Md. 464; *Rice v. State,* 9 Md. App. 552. We can only interpret the trial court's remarks to mean that the same result would obtain, namely a verdict of not guilty, on the case going to trial and it was proved the woman consented as was obtained by the confession of the State that appellant was insane. The implication is why, therefore, go to the trouble, time and expense of a trial on the merits. The reason for trial on the merits, unless waived by an accused, is that if consent to the intercourse is established, either as a matter of law or to the satisfaction of the trier of fact, the accused walks out of court a free man on the verdict of not guilty which must follow. That verdict has no strings attached because there was no crime committed; whether or not the accused was insane at the time of the intercourse is neither relevant nor material to the verdict. On the other hand, if the not guilty verdict, as here, is by reason of the insanity of the accused at the time of the commission of a crime, the accused is by no means a free agent. In the discretion of the court he may be committed to the Department of Mental Hygiene for confinement in one of the hospitals of the State for examination and evaluation to determine, by the appropriate statutory standards applicable to civil commitment proceedings, whether he by reason of mental disease or defect would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others. Upon the basis of the report made, and any other evidence before it, the court may in its discretion, direct that he be confined in a facility designated by the Department for treatment. After three months from his confinement for evaluation, he shall have the right to apply for release under judicial proceedings. Upon a report by the facility that he would not be a danger, the court shall

order his release unless good cause for a contrary determination as to dangerousness is shown by the State's Attorney. After the first 90 days following a commitment following a finding of not guilty by reason of insanity, the Department of Mental Hygiene is of the view that he may be released on condition (and he is not otherwise subject to release without condition) without danger to himself or to the safety of the person or property of others, it shall make application for his release in the court by which he was committed. A copy of the application shall be sent to the State's Attorney, the clerk of the court and the clerk shall send a copy to the last counsel for such person. If the court is satisfied that the committed person may be released on condition without danger to himself or the safety of the person or property of others, it shall order his release on such reasonable conditions as it determines necessary. If within 5 years after such conditional release the court shall determine, upon hearing evidence, that the conditions of release have not been fulfilled and that his continual release constitutes by reason of mental disorder a danger to himself or to the safety of the person or property of others, it shall forthwith order him to be recommitted. Code, Art. 59, §§ 11 and 12 (effective 1 July 1970, Art. 59, §§ 27 and 28). Compare the procedures for voluntary civil commitment and involuntary civil commitment and release therefrom under the old law and the new law effective 1 July 1970. Code, Art. 59, § 37, new § 11, (voluntary commitment) ; §§ 31, 32, new §§ 12, 13, 14, 15 (involuntary commitment) ; release from voluntary commitment, § 37, new § 11; release from involuntary commitment, §§ 20, 21, new §§ 14, 15. To submit an accused to such commitment stemming upon a charge that he committed a crime and authorized upon a finding that he was not guilty thereof by reason of insanity without a trial at which the State produces evidence sufficient in law to show that the crime charged was committed and the accused, if sane, committed it, *Williams v. State*, 5 Md. App. 450, violates the presumption that he is innocent until proved guilty which

is the heart of our judicial process and denies him due process of law. See *Jones v. State,* 5 Md. App. 180, 189. Of course, an accused may voluntarily waive such a trial, but such waiver must affirmatively appear in the record and otherwise meet the test for waiver of a constitutional right. See *Moore v. State,* 7 Md. App. 330, 334. Such waiver is not shown by the mere entry of a plea of an accused alleging that he was insane at the time of the commission of the alleged crime in addition to a general plea of not guilty. Both are allowed by law. Code, Art. 59, § 9 (b) ; Rule 720; *Sweeney v. State, supra.* See *Avey v. State,* 9 Md. App. 227, 231. And, of course, here it is clear that appellant did not waive a trial. He demanded it below and challenged the action of the court in accepting the State's confession of not guilty by reason of insanity.

We believe, in the circumstances, that appellant was entitled to have the indictment returned against him tried on the pleas he made. See *Strawderman v. State,* 4 Md. App. 689, 694-698. We hold that there was prejudicial error in the lower court's acceptance of the State's confession that appellant was not guilty by reason of insanity, in its directing that such verdict be entered, and in its commitment of appellant to the Clifton T. Perkins State Hospital to remain until released by due course of law.[5] We vacate the order of the lower court of 23 January 1970 that the State's confession of not guilty by reason of insanity be accepted and entered and its order of the same date committing appellant to the Clifton T. Perkins State Hospital to be "there confined until he shall have recovered his reason and be discharged by due course of law." We remand the case for trial.

We observe that it is within the province of the State to enter, in open court, a *nolle prosequi* of the indictment against appellant. Rule 711. See *Barrett v. State,* 155

---

5. Our holding here is in nowise a departure from our ruling in *Sweeney v. State, supra,* applied in *Avey v. State, supra,* that an accused is not entitled to a bifurcated trial on the separate issues of insanity and guilt of the crime. We expressly reaffirm that rule.

Md. 636, *Greathouse v. State*, 5 Md. App. 675. Steps could then be taken, as in the best interest of both appellant and society, to have him civilly committed under the authority of the appropriate statutory provisions.[6]

> *Each order of 23 January 1970 vacated; case remanded for trial.*

---

6. At one point in the proceedings below when appellant's counsel suggested he did not commit a crime, the court indicated that if this were so "[i]nsanity is something else. We can take care of him if he is insane."