[No. 42975.   En Banc.   December 26, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. WILLIE WILEY JONES, *Respondent.*

Donald C. Brockett, Prosecuting Attorney, and Fred J. Caruso, Assistant, for appellant.

Richard L. Cease, Spokane County Public Defender, George A. Malton, Assistant, and Richard Ayres, for respondent.

ROSELLINI, J.—By an information filed on July 13, 1973, the respondent was charged with the crime of sodomy. On the same date the court entered an order appointing a sanity commission, pursuant to RCW 10.77.060 (Laws of 1973, 1st Ex. Sess., ch. 117, § 6).

The sanity commission, composed of Sol Levy, M.D., and Robert A. Wetzler, M.D., submitted to the court a written report of the examination. The commission found that the respondent was competent to stand trial, that he knew the nature, consequences and criminality of his conduct but did not appreciate the same, that he was a substantial danger to himself and others, and that he was in need of in-patient psychiatric treatment under the control of the court or institutions.

Based on the sanity commission's written report, the respondent's court-appointed counsel filed a motion for judgment of acquittal, pursuant to RCW 10.77.080. In addition, the respondent filed a special plea of not guilty by reason of insanity. When the motion was heard before the court, sitting without a jury, Dr. Sol Levy was called as a witness, a procedure authorized by RCW 10.77.100. Testimony was also given by Dr. Jerzy Slobodow, who had examined the respondent at the request of his counsel. After hearing the testimony of these witnesses and studying the report, the court made findings of fact and conclusions of law and entered a judgment of acquittal and an order of commitment. The prosecutor appealed directly to this court, rather than to the Court of Appeals as authorized by RCW 10.77.230. Because the appeal involves a question of statutory interpretation presented for the first time to an appellate court, we elected to retain jurisdiction.

In enacting Laws of 1973, 1st Ex. Sess., ch. 117, p. 795 (RCW 10.77), the legislature prescribed a detailed procedure for the trial, commitment and treatment of persons adjudged to be criminally insane.

RCW 10.77.010 provides:

(1) "Criminally insane" means any person who has been acquitted of a crime charged by reason of mental disease or defect excluding responsibility, and thereupon found to be a substantial danger to himself or other persons and in need of further control by the court or other persons or institutions. No condition of mind proximately induced by the voluntary act of a person charged with a crime shall be deemed a mental disease or defect excluding responsibility.

RCW 10.77.060, providing for the appointment of qualified experts or professional persons to examine a defendant who has pleaded not guilty by reason of mental disease or defect excluding responsibility, directs that the report of the examination shall include the following:

(a) A description of the nature of the examination;

(b) A diagnosis of the mental condition of the defendant;

(c) If the defendant suffers from a mental disease or defect, an opinion as to his capacity to understand the proceedings against him and to assist in his own defense;

(d) If the defendant has indicated his intention to rely on the defense of irresponsibility pursuant to RCW 10.77.030, an opinion as to the extent he lacked capacity either:

(i) To know or appreciate the nature and consequences of such conduct; or

(ii) To know or appreciate the criminality of such conduct;

(e) When directed by the court, an opinion as to the capacity of the defendant to have a particular state of mind which is an element of the offense charged;

(f) An opinion as to whether the defendant is a substantial danger to himself or others and is in need of control by the court or other persons or institutions.

RCW 10.77.080 provides:

If the report filed pursuant to RCW 10.77.060 finds that

the defendant at the time of the criminal conduct charged did not have capacity to either (1) know or appreciate the nature and consequence of such conduct; or (2) know or appreciate the criminality of such conduct, the defendant, upon notification to the prosecuting attorney, may move that a judgment of acquittal on the grounds of mental disease or defect excluding responsibility be entered. If the court, after a hearing on the motion, is satisfied that such impairment was sufficient to exclude responsibility, the court shall enter judgment of acquittal on the grounds of mental disease or defect excluding responsibility. If the motion is denied, the question shall be submitted to the trier of fact in the same manner as all other issues of fact.

RCW 10.77.100 provides, *inter alia*:

(2) Experts or professional persons who have examined the defendant and who have been called as witnesses concerning his mental condition shall be permitted to make a statement as to the nature of his examination, his diagnosis of the mental condition of the defendant at the time of the commission of the offense charged and his opinion as to the extent, if any, the defendant lacked capacity either (1) to know or appreciate the nature and consequence of such conduct; or (2) to know or appreciate the criminality of such conduct. He shall be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion.

The doctors who examined the respondent made their reports and gave their testimony with reference to the test set forth in these provisions. It was their unanimous opinion that the respondent was suffering from a serious mental disease at the time of the commission of the crime. Two of them thought that the respondent was capable of knowing in a purely cognitive sense the nature and consequences and criminality of his conduct. All were agreed that he was incapable of appreciating these matters. One expert, Dr. Slobodow, testified that in his opinion the respondent was not capable of either knowing or appreciating the nature, consequences and criminality of his conduct at the time of

the alleged crime, and that he was not competent to stand trial.

The trial court was interested in learning what meaning the doctors had attached to the word "appreciate." Dr. Levy stated that as he understood the meaning of the terms "know" and "appreciate," the process of knowing involves purely cognitive activity, whereas the process of appreciation involves the emotions or the element of "affect," as psychiatrists term it, to a greater or lesser degree depending on the subject matter which is the object of appreciation. Dr. Slobodow stated that in his view all mental processes involve both the intellectual or cognitive, and the emotional aspect.

Dr. Levy was not asked to define the word "appreciate." He testified concerning the mental processes involved in appreciation, but apparently assumed that the word is one of commonly understood meaning. Dr. Slobodow, on the other hand, was specifically asked to define the word. He said that to appreciate means to evaluate. He gave the opinion that the emotional factor in evaluation or appreciation varied with the type of subject matter but that both cognitive and affective processes were involved in appreciation as well as in knowledge.

It is the theory of the prosecutor, as we understand it, that the legislature did not intend, when it enacted RCW 10.77, to alter the definition of criminal insanity which this court has consistently approved, that is, the *M'Naghten* definition, under which, he suggests, we have always regarded knowledge and appreciation as synonymous and purely cognitive in nature.

In none of the cases which he cites was this proposition discussed. In *State v. Collins*, 50 Wn.2d 740, 314 P.2d 660 (1957), this court considered a proposal that it adopt the so-called *Durham* rule, approved by the District of Columbia in *Durham v. United States*, 214 F. 2d 862 (D.C. Cir. 1954). Under that rule, to find the defendant not guilty by reason of insanity or mental irresponsibility, the jury must find (1) that he was suffering from a diseased (or defec-

tive) mental condition at the time of the commission of the act charged against him and (2) that there was a causal relation between such disease or defective condition and the act. The proposal was rejected upon the ground that the test was not one which could be applied by laymen, and that the function of the jury in a criminal case was to determine whether the defendant at the time he committed the forbidden act, had the capacity to entertain a criminal intent. We were not there asked to determine nor did we consider what mental processes are involved in either knowledge or appreciation.

In *State v. White,* 60 Wn.2d 551, 579, 585, 374 P.2d 942 (1962), this court rejected a proposal that it approve the definition of criminal insanity contained in section 4.01 of the Model Penal Code, adopted by the American Law Institute on May 24, 1962. The instruction requested in that case would have told the jury:

> " 'Mental irresponsibility means that the defendant is not responsible for the crimes charged herein if at the time of said crimes, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his act, or to conform his conduct to the requirements of law.

This court said:

> The question before us is whether we, as the majority of jurisdictions, should refuse to extend absolute immunity from criminal responsibility to persons who, although capable of understanding the nature and quality of the acts ([and having] the ability to distinguish between right and wrong), are unable to control their own behavior as a result of mental disease or defect.

(Footnote omitted.)

This court refused to adopt or expand the definition of insanity to include the inability to control one's conduct. It adhered to the *M'Naghten* rule, stating as its reasons, first, that any arguments for change in policy should be addressed to the legislature; second, that the test proposed would be extremely difficult to apply; and third, from the

point of view of social utility and the purposes of the criminal law, the *M'Naghten* test was preferable to the American Law Institute test.

Again in that case, there was no discussion of the mental processes involved in knowledge or understanding or the ability to perceive the moral qualities of an act, all of these being words which this court used with reference to *M'Naghten's* rule. The word "appreciate" was not discussed. It appears, of course, in the American Law Institute test but is not a factor in that aspect of the test which this court rejected.

*State v. Reece*, 79 Wn.2d 453, 486 P.2d 1088 (1971), the most recent opinion of this court relied upon by the prosecutor, was another case where we were asked to adopt the American Law Institute test of insanity. As in *State v. White, supra,* the emphasis was upon the second facet of the rule, which exonerates the defendant if he was unable to control his conduct. Also, as in *State v. White, supra,* this court commended to the legislature the question whether a different test of insanity should be adopted. As in the other cases cited, there was no discussion of the mental processes involved in knowledge or appreciation.

*State v. Thomas*, 8 Wn. App. 495, 507 P.2d 153 (1973), a Court of Appeals decision cited by the prosecutor, holds that the *M'Naghten* rule as applied in this state requires the defendant to show both an inability to perceive the nature and quality of the act with which he is charged, and an inability to tell right from wrong with reference to such act. The court followed the precedents of this court with approval.[1]

---

[1] The court found itself in agreement with a statement from F. Whitlock, *Criminal Responsibility and Mental Illness* 52 (1963), which reads:

> For, as Lord Cooper said, when asked whether it was not desirable to have some yardstick to guide the jury; 'I do not think so, for this reason. . . . However much you charge a jury as to the M'Naghten Rules or any other test, the question they would put to themselves when they retire is—Is the man mad or is he not?' The

■ ▪ We are unable to find in any of the cited cases an analysis of the mental functions involved in the phenomena known as knowledge and appreciation. We have not held that knowledge and appreciation are synonymous terms. To do so would be to disregard their ordinary meaning. *Webster's Third New International Dictionary* (1968), a volume rather notoriously liberal in its adoption of the vernacular, defines "know" as, *inter alia*, to become acquainted with, to apprehend, perceive, recognize the quality of, or have cognizance, consciousness or awareness of, etc. The word appreciate does not appear in the lengthy definition.

"Appreciate" is defined, in accordance with the understanding of Dr. Slobodow, as, *inter alia*, to evaluate highly or approve warmly, to judge or evaluate the worth, merit, quality or significance of; to comprehend with knowledge, judgment and discrimination (citing Judge Cardozo here), to judge with heightened perception or understanding, to be fully sensible of, as if through personal experience. Synonyms are value, prize, treasure, cherish. The word "know" is not among them.

■ As the prosecutor acknowledges, in interpreting a statute, the words used must be given their usual, ordinary, commonly accepted and full meaning. *Hansen v. Lybbert*, 75 Wn.2d 671, 453 P.2d 650 (1969). *Bixler v. Hille*, 80 Wn.2d 668, 497 P.2d 594 (1972). We assume then that the legislature understood the meaning of these words when it used them; furthermore, since it specifically provided for the appointment of qualified experts to inquire into the mental condition of a defendant and to give their opinions, it must have intended that these experts would also ascribe to these words their ordinary meaning. The legislature did not attempt to define the words and, insofar as we are able to ascertain, they are not medical terms of art. They refer to certain mental capacities. Evidently the legislature did

---

Royal Commission on Capital Punishment had little doubt that most English juries do the same.
(Footnote omitted.)

not consider significant the particular mental processes involved.

The testimony of the doctors taken in this case indicates that both of them used the words in their ordinary sense. It is true that they gave a more restricted meaning to the word "knowledge" than is ordinarily accorded it. This can be attributed to the fact that they have both had experience in testifying under *M'Naghten's* rule and have apparently been given the impression that the courts have used the word only in the narrowest sense. The two doctors were not in agreement as to the respondent's capacity to *know,* but they both agreed that he did not have the capacity to *appreciate* the nature and consequences or the criminality of his conduct.

When the trial court accepted the report of the commission as clarified by testimony of Dr. Levy, and entered its judgment of acquittal by reason of mental irresponsibility, at the same time ordering commitment of respondent to a state mental institution, it acted within the scope of the authority granted under the act.

One other question is raised. It is, we imagine, unique in the annals of prosecutorial contentions. The prosecutor asserts that the respondent's constitutional rights were violated because the statute does not afford him a right to a jury trial and does not require proof and findings that he committed the act charged.

While it is always open to interested persons to show that the legislature has transgressed the limits of its power and persons injuriously affected may question the validity of a law, it is the general rule that the constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby. *State v. Rowe,* 60 Wn.2d 797, 376 P.2d 446 (1962); *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962); *State v. Bowman,* 57 Wn.2d 266, 356 P.2d 999 (1960); *Kitsap County v. Bremerton,* 46 Wn.2d 362, 281 P.2d 841 (1955); accord, *Calvary Bible Presbyterian Church v. Board of Regents,* 72 Wn.2d 912, 436 P.2d

189 (1967); *Little v. Rhay*, 68 Wn.2d 353, 413 P.2d 15 (1966). 16 Am. Jur. 2d *Constitutional Law* § 119 (1964), 16 C.J.S. *Constitutional Law* § 76 (1956). There is an exception to this rule where the constitutional rights of persons who are not immediately before the court could not be effectively vindicated except through an appropriate representative. *NAACP v. Alabama*, 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958); *NAACP v. Button*, 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963); *Barrows v. Jackson*, 346 U.S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031, *rehearing denied*, 346 U.S. 841, 98 L. Ed. 361, 74 S. Ct. 19 (1953); 16 Am. Jur. 2d *Constitutional Law* § 122, at 318 (1964).

The prosecutor makes no showing that this case falls within this exception to the general rule and has cited no authority which would support his claim of a right to contend that the constitutional rights of the respondent were violated.

But assuming the prosecutor can properly raise the issue, his position cannot be sustained. The statute does not deprive any defendant of the right to a jury trial. On the contrary, it expressly recognizes that right in RCW 10.77.030-.040, providing that evidence of mental disease or defect is admissible only if the defendant gives notice of his intention to rely upon that defense, that the defendant must establish the defense by a preponderance of the evidence, and that when the defendant is acquitted on the grounds of mental disease or defect excluding responsibility, the verdict and judgment shall so state; and requiring the giving of certain jury instructions.

The procedure utilized by the defendant in this case is a statutory alternative to a jury trial, available to the defendant at his own election. The prosecutor does not deny that a constitutional right can be waived. By invoking the statutory procedure, the respondent admitted that he committed the act in question and asked that the court make the necessary findings to acquit him on the grounds of mental disease or defect excluding responsibility. In so doing, the respondent waived the right to have a jury decide whether

he committed the act charged, provided the court should find that he was not responsible by reason of his mental condition. Significantly the court may not enter any judgment other than acquittal. If it is not satisfied that such a judgment should be entered, the question must be submitted to the trier of the fact at a regular trial. Far from denying the defendant a constitutional right, the statute bestows upon him a new right, not heretofore enjoyed.

The case of *Jackson v. Indiana*, 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972), strongly relied upon by the prosecutor, is not in point. In that case the defendant was found incompetent to stand trial and was committed indefinitely. The holding of the United States Supreme Court was that a state cannot constitutionally commit a person charged with a crime for an indefinite period with no greater showing than that he is incompetent to stand trial on the charges against him. Those are not the circumstances of this case. Furthermore, there was in the statute under consideration in that case no provision for periodic review of the defendant's condition. An examination of RCW 10.77 will show that the legislature in this act made detailed provisions for periodic review and evaluation of the condition of a committed defendant.

*In re Quesnell*, 83 Wn.2d 224, 517 P.2d 568 (1973), is also relied upon. The alleged incompetent in that civil commitment proceeding had demanded a jury trial, through her private counsel. Her demand was ignored by the court. We held that her court-appointed guardian did not have the authority to refuse and override her demand for a jury trial, since the posture he assumed at the hearing was not that of an advocate zealously protecting the rights of the ward. The respondent here was represented by counsel, who presumably acted with his rights and best interests in mind. *See State v. Cummings*, 52 Wn.2d 601, 328 P.2d 160 (1958). Thus, the cited case is inapposite.

The judgment is affirmed.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied April 15, 1975.