[No. 4601–II. Division Two. January 27, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. RAY J. BRASEL, *Appellant*.

S. *Brooke Taylor* (of *Taylor & Taylor, P.S.C.*), for appellant.

*Grant S. Meiner, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for respondent.

*John H. Hertog,* amicus curiae.

REED, C.J.—Defendant Ray J. Brasel appeals an order committing him, as a criminally insane person, to the custody of the Secretary of the Department of Social and Health Services. We reverse.

Defendant was arrested after attempting to cash a $50 check he took from the Sequim Post Office. He was charged with uttering a forged instrument in violation of RCW 9A.60.020(1)(b), a class C felony. After a preliminary hearing at which defendant's trial attorney questioned his competency to stand trial, the court temporarily committed defendant, pursuant to RCW 10.77.060, to Western State Hospital for psychiatric examination. In their report to the court, the hospital staff diagnosed defendant as a schizophrenic, chronic paranoid type. The staff concluded defendant was competent to stand trial but was legally insane at the time of the alleged crime. The staff report recommended:

> We suggest that Mr. Brasel be placed in a group home, halfway house or congregate care facility where his psychiatric condition can be monitored on a regular basis. It is obvious that he is unable to care for himself on his own.

The report did not indicate whether defendant

> is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions,

one of the requirements of RCW 10.77.060(3).

After reviewing this report, the trial court held a hearing at which defendant was present and represented by counsel. During the hearing defense counsel filed notice of an insanity defense, and the prosecutor agreed that defendant was legally insane at the time of the alleged crime. Defense

counsel then made a motion, pursuant to RCW 10.77.080,[1] for a judgment of acquittal by reason of insanity, which the court accepted. At the conclusion of the hearing, the court found defendant committed the act of forgery as charged, was insane at the time of the act, and "is a substantial danger to himself or others and is in need of control by other persons or institutions." The court acquitted defendant by reason of insanity and committed him, as a criminally insane person, to the custody of the Secretary of the Department of Social and Health Services, pursuant to RCW 10.77.110.[2] Defendant appeals this commitment order.

---

[1]RCW 10.77.080 provides:

"Motion for acquittal on grounds of insanity—Hearing—Findings. The defendant may move the court for a judgment of acquittal on the grounds of insanity: *Provided,* That a defendant so acquitted may not later contest the validity of his detention on the grounds that he did not commit the acts charged. At the hearing upon said motion the defendant shall have the burden of proving by a preponderance of the evidence that he was insane at the time of the offense or offenses with which he is charged. If the court finds that the defendant should be acquitted by reason of insanity, it shall enter specific findings in substantially the same form as set forth in RCW 10.77.040 as now or hereafter amended. If the motion is denied, the question may be submitted to the trier of fact in the same manner as other issues of fact."

[2]RCW 10.77.110 provides:

"Acquittal of felony—Discharge, hospitalization, conditional release—Acquittal of nonfelony—Release or custody for evaluation. If a defendant is acquitted of a felony by reason of insanity, and it is found that he is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall direct his final discharge. If it is found that such defendant is a substantial danger to himself or others and in need of control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter. If it is found that such defendant is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, but that he is in need of control by the court or other persons or institutions, the court shall direct his conditional release. If the defendant is acquitted by reason of insanity of a crime which is not a felony, the court shall order the defendant's release or order the defendant's continued custody only for a reasonable time to allow the county-designated mental-

As his first assignment of error, defendant contends there was no evidence before the trial court that he is "a substantial danger to other persons" or that he presents "a substantial likelihood of committing felonious acts jeopardizing public safety or security. . ." RCW 10.77.040, .080. The State concedes there is no evidence that defendant is dangerous to others or likely to commit felonious acts, but notes that the second sentence of RCW 10.77.110 directs the court to commit a defendant acquitted by reason of insanity if it finds he "is a substantial danger to *himself or others* . . ." (Italics ours.) Thus, the first issue presented is whether defendant can be committed as criminally insane merely on the basis of evidence that he is dangerous to himself.

To resolve this issue, we must examine the history of RCW 10.77. Prior to 1974, RCW 10.77.010(1) defined a "criminally insane" person as

> any person who has been acquitted of a crime charged by reason of mental disease or defect excluding responsibility, and thereupon found to be a substantial danger *to himself or other persons* and in need of further control by the court or other persons or institutions.

(Italics ours.) Laws of 1973, 1st Ex. Sess., ch. 117, § 1, p. 796. *See State v. Jones*, 84 Wn.2d 823, 529 P.2d 1040 (1974). In 1974, seeking to distinguish civil commitments from criminal commitments, the legislature significantly amended RCW 10.77 by removing all references to "danger to himself," replacing the above definition of a "criminally insane" person with the present definition:

> any person who has been acquitted of a crime charged by reason of insanity, and thereupon found to be a substantial danger to other persons or to present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions.

House Journal, 43rd Legislature (1973), at 4238.

---

health professional to evaluate the individual and to proceed with civil commitment pursuant to chapter 71.05 RCW, if considered appropriate."

Unfortunately, the bill incorporating these changes contained significant drafting errors when it reached the Governor for his signature. Section 10 of the bill (amending RCW 10.77.110) read in pertinent part:

> If it is found that the defendant is a substantial danger to other persons, or does *not* present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter.

(Italics ours.) House Journal, 43rd Legislature (1973), at 4245. The Governor recognized the word "not" was an obvious drafting error that did not reflect the intent of the legislature.[3] Rather than simply striking the offending word, he vetoed the entire sentence in which it appeared, restoring the language of the existing law, due to concerns about constitutional limitations on his item veto power. *See, e.g., Washington Ass'n of Apartment Ass'ns, Inc. v. Evans,* 88 Wn.2d 563, 564 P.2d 788 (1977). The Governor made clear the purpose behind his veto by urging the legislature to correctly amend this portion of RCW 10.77.110 at its next session. Up to now, the legislature regrettably has neglected to do so.

██ In construing statutes, our primary object is to effectuate legislative intent. *Gross v. Lynnwood,* 90 Wn.2d

---

[3]The Governor's veto message stated:

"Section 10 of the bill contains another obvious drafting error which reverses the intent of the amendatory language. Presumably, the Legislature intended that if a defendant acquitted by reason of insanity is found, among other things, to present a substantial likelihood of committing felonious acts jeopardizing public safety or security, the court would be required to order his hospitalization or other treatment less restrictive than detention in a state mental hospital. As drafted and enacted, the result would be the exact opposite. Accordingly, I have determined to veto that item in section 10 and by this veto I am restoring the language of the existing law, and urge the Legislature to make another attempt at enacting correct amendatory language at its next session. I have been urged by some to correct this drafting error by simply vetoing the word "not" contained in that item, but have determined not to do so as such a veto would be of questionable constitutionality." Senate Journal, 43rd Legislature (1973), at 1070.

395, 583 P.2d 1197 (1978). When vetoing bills passed by the legislature, the Governor acts in a legislative capacity and as part of the legislative branch of state government. *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944); *Shelton Hotel Co. v. Bates,* 4 Wn.2d 498, 104 P.2d 478 (1940). Therefore, we cannot consider the intent of the legislature apart from the intent of the Governor. *Shelton Hotel Co. v. Bates, supra.* Our Supreme Court often has stated that we are not authorized to read into a statute those things which we conceive the legislature may have left out unintentionally. *E.g., Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 573 P.2d 10 (1977); *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 269 P.2d 962 (1954). Occasionally, however, the literal expression of legislation may be inconsistent with the obvious objectives or policy behind it, and in such circumstances the spirit or intention of the law must prevail over the letter of the law. *Janovich v. Herron,* 91 Wn.2d 767, 592 P.2d 1096 (1979); *State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 546 P.2d 75 (1976); *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971). As stated in 2A C. Sands, *Statutes and Statutory Construction* § 47.38 (4th ed. 1973):

> Although some courts have been hesitant to supply or insert words, the better practice requires that a court enforce the legislative intent or evident statutory meaning where it is clearly manifested. The inclusion of words necessary to clear expression of the intent or meaning is in aid of the legislative authority; the denial of the power to insert when the intent or meaning is clear is more nearly a usurpation of legislative power for it results in destruction of the legislative purpose.

It is apparent that neither the legislature nor the Governor intended persons to be committed as criminally insane merely upon a showing of dangerousness to themselves.

Statutory provisions are interpreted in a manner so as to avoid strained or absurd consequences which could result from a literal reading. *State v. (1972) Dan J. Evans Campaign Comm., supra; Alderwood Water Dist. v. Pope &*

*Talbot, Inc.,* 62 Wn.2d 319, 382 p.2d 639 (1963). Adopting the literal construction of RCW 10.77.110 urged by the State would lead to the absurd consequence that a defendant could be criminally committed merely upon a showing that he is dangerous to himself, although he immediately would be entitled to final discharge or conditional release under RCW 10.77.200(3).[4] Under that section the determinative test is whether he presents a substantial danger to other persons or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security.

 Thus, we ignore the literal language of RCW 10.77-.110 and construe the second sentence of the statute as if it read:

> If it is found that such defendant is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter.

*See State v. Wilcox,* 92 Wn.2d 610, 614, 600 P.2d 561 (1979). We hold that defendant should not have been committed under RCW 10.77. The statute, as construed, does not authorize a commitment for one dangerous to himself, and defendant is concededly not dangerous to others or likely to commit felonious acts. The trial court found, however, on the basis of substantial evidence, that defendant is in need of control by other persons or institutions. Accordingly, it should now direct his conditional release rather than his final discharge. RCW 10.77.110. We reverse the order committing defendant to the custody of the Secretary

---

[4]RCW 10.77.200(3) provides:

"Nothing contained in this chapter shall prohibit the patient from petitioning the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions."

of the Department of Social and Health Services and order his immediate release upon terms and conditions to be set by the court below.

Because our resolution of this first issue does not affect the judgment of acquittal by reason of insanity and leaves defendant subject to the control of the court, we must also address a second assignment of error. Defendant has not asked this court to vacate the judgment, but has asked us to reverse the trial court's commitment order because the judgment, upon which the court based its order, was entered improperly. He contends the trial court erred in accepting the motion for acquittal by reason of insanity because he did not understand the consequences of such a motion. In essence, defendant argues that there are constitutional constraints on the acceptance of an RCW 10.77.080 motion for acquittal by reason of insanity that are similar to those on the acceptance of a guilty plea. We agree.

■ Due process requires that before a defendant can enter a voluntary and intelligent guilty plea, he must understand both the nature of the charges against him and the consequences of the plea. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); *Kercheval v. United States,* 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582 (1927); *Woods v. Rhay,* 68 Wn.2d 601, 414 P.2d 601 (1966). *See also* CrR 4.2(d), (g). A defendant cannot make an intelligent admission that he committed the offense charged unless he is aware of the essential elements of the offense. *Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). The consequences of which he must be aware when he tenders a plea of guilty include the necessary waiver of his constitutional rights to remain silent, to confront accusers, and to jury trial. He must also be aware of the sentencing alternatives possible, including the maximum possible sentence for the offense to which he pleads guilty. *Yellowwolf v. Morris,* 536 F.2d 813 (9th Cir. 1976); *United States ex rel. Pebworth v. Conte,* 489 F.2d 266 (9th Cir. 1974); *State v. Holsworth, supra* at 153, 161.

A motion for judgment of acquittal under RCW 10.77.080 has many of the same consequences as a plea of guilty. By filing the RCW 10.77.080 motion, a defendant admits to committing the act charged, and if the court accepts the motion, he waives his constitutional right to a jury trial on that issue. *State v. Jones,* 84 Wn.2d 823, 832–33, 529 P.2d 1040 (1974). He may not later contest the validity of his detention on the ground that he did not commit the acts charged. RCW 10.77.080. Furthermore, if the court accepts the motion, he waives the right to have a jury determine whether he is dangerous to others or likely to commit felonious acts jeopardizing public safety or security, RCW 10.77.040, .080, and he may give up the right to confront his accusers. Significantly, he subjects himself to the possibility of commitment as criminally insane for as long as the maximum penal sentence for the offense charged. Accordingly, due process entitles a defendant to have such a judgment vacated unless he understood, at the time of the motion for acquittal by reason of insanity, the nature of the charges against him and the consequences of the motion. *See People v. Rizer,* 5 Cal. 3d 35, 484 P.2d 1367, 95 Cal. Rptr. 23 (1971); *People v. Wagoner,* 89 Cal. App. 3d 605, 152 Cal. Rptr. 639 (1979); *People v. Vanley,* 41 Cal. App. 3d 846, 116 Cal. Rptr. 446 (1974); *cf. State v. Colville,* 88 Wn.2d 43, 46–48, 558 P.2d 1346 (1977); *Morris v. State,* 11 Md. App. 18, 25–26, 272 A.2d 663, 667 (1971); *People v. Murray,* 247 Cal. App. 2d 730, 733–34, 56 Cal. Rptr. 21, 23–24 (1967). *See also* RCW 10.77.020(1).

■ The record here does not show whether Mr. Brasel's RCW 10.77.080 motion was made voluntarily and intelligently. With respect to pleas of guilty, CrR 4.2 requires that the record of the plea hearing, unsupplemented by any evidence extrinsic to that record, show on its face that the plea was entered voluntarily and intelligently. RCW 10.77-.080 motions, however, are not governed by CrR 4.2. When the record of a plea–taking procedure fails to demonstrate that constitutional standards were satisfied, but the procedure conformed to all applicable statutes and court rules,

the State must make "a clear and convincing showing that the plea was in fact knowingly and understandably entered," but may introduce evidence extrinsic to the plea hearing record in making this showing. *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976). Because we equate an RCW 10.77.080 motion with a plea of guilty for due process purposes, we remand for an evidentiary hearing and the entry of findings as to whether defendant was informed of and understood: (1) the essential elements of the offense charged; (2) that by making the motion he admitted to committing the acts charged and that, if acquitted, he might not later contest the validity of his detention on the ground that he did not commit the acts charged; (3) that by making the motion he waived his rights to remain silent, to confront his accusers, and to be tried by a jury; and (4) that, if acquitted, he could be committed to a state hospital for the criminally insane for a term up to the maximum possible penal sentence for the offense charged. If Mr. Brasel did not understand the nature and consequences of the RCW 10.77.080 motion, the judgment of acquittal by reason of insanity must be vacated upon defendant's motion.[5]

Reversed and remanded.

PETRIE, J., concurs.

PETRICH, J. (concurring in part, dissenting in part)—I concur in that portion of the majority decision which remands the case for an evidentiary hearing on whether the defendant intelligently and voluntarily moved for acquittal by reason of insanity. I must, however, dissent from that portion of the decision which "judicially amends" RCW 10.77.110 so as to prohibit hospitalization of one acquitted by reason of insanity, but who is a danger to himself, in

---

[5]We refrain from ordering the judgment vacated absent a motion by Mr. Brasel seeking such relief because a judgment of acquittal by reason of insanity provides a defendant with certain substantial benefits. *State v. Colville*, 88 Wn.2d 43, 48, 558 P.2d 1346 (1977).

spite of the plain reading of the statute to the contrary. In construing a statute, we may not read into it matters which are not there, nor modify it by construction. *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967); *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963); *State v. Rinkes,* 49 Wn.2d 664, 306 P.2d 205 (1957).

The pronouncements of the court in *State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980), it seems to me, clearly set forth the court's limitations on "corrective interpretations" when it said at page 8:

> As attractive as the State's proposed solution may be, we do not have the power to read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent omission. *Auto Drivers Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 421, 598 P.2d 379 (1979); *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978); *Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 403, 573 P.2d 10 (1977). The statutory hiatus is unfortunate. Nevertheless, it would be a clear judicial usurpation of legislative power for us to correct that legislative oversight.

It is for the legislature, not the court, to make whatever changes the legislature may deem appropriate within the constraints of the constitution.