[No. 5063–7–III. Division Three. June 21, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD NIEMANN, *Appellant.*

---

*Richard Niemann,* pro se, and *Joseph E. McGough,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Laurence S. Moore, Deputy,* for respondent.

GREEN, J.—On February 23, 1982, Richard Niemann pleaded guilty to first degree robbery. He stipulated that on

December 29, 1981, he pointed a loaded sawed–off shotgun at an employee in a shopping mart and obtained a sum of money. On March 2, he was sentenced to life imprisonment. He appeals, raising two issues: (1) did the court err in sentencing him to a term of life imprisonment; and (2) did the court abuse its discretion in denying his request for a presentence report or a continuance to allow his attorney to conduct such a background investigation. We affirm.

Prior to July 1, 1981, RCW 9A.20.020(1)(a) provided that "[e]very person" convicted of a class A felony (which includes first degree robbery)[1] shall be imprisoned "in a state correctional institution for a maximum term . . . of not less than twenty years". *See* Laws of 1975, 2d Ex. Sess., ch. 38, § 2, p. 153. Under Washington's indeterminate sentencing policy, the court must impose the maximum term provided by law. RCW 9.95.010; *State v. Bishop,* 24 Wn. App. 414, 415, 601 P.2d 962 (1979), *aff'd,* 94 Wn.2d 116, 614 P.2d 655 (1980). The actual period of confinement is determined by the parole board. RCW 9.95.040. Judicial discretion is authorized only when the Legislature fails to fix the maximum term. *State v. Bishop, supra.*

Effective July 26, 1981, RCW 9A.20.020 was amended to provide:

> No person convicted of a classified felony shall be punished by confinement . . . *exceeding* the following:
> (a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment . . .

(Italics ours.) Laws of 1981, ch. 137, § 37(1)(a), p. 534. This amendment was part of the Sentencing Reform Act. *See* Laws of 1981, ch. 137. While many sections of that act were made effective July 1, 1984, the amendment to RCW 9A.20.020 was not among them.

Effective April 1, 1982, the Legislature again amended RCW 9A.20.020. *See* Laws of 1982, ch. 192, §§ 9, 10. Section 9(1)(a) reinstituted the pre–1981 amendment punishment for class A felonies, *i.e.,* not less than 20 years. That section

---

[1]RCW 9A.56.200(2).

applies to crimes committed before July 1, 1984. Section 10(1)(a) provided that class A felonies committed on or after July 1, 1984, be punished by confinement not exceeding a term of life. This amendment essentially extended the effective date of the 1981 amendment to July 1, 1984.

Defendant committed the robbery and was sentenced while the 1981 amendment was in effect—consequently, he was sentenced to confinement for a term not exceeding life. It is his position that the language of the 1981 amendment gave the court discretion to sentence him to less than life and the court erred in imposing the maximum. He further argues the Legislature's failure to provide that the 1981 amendment of RCW 9A.20.020 was to become effective in 1984 was an inadvertent error, citing *State v. Taylor,* 97 Wn.2d 724, 649 P.2d 633 (1982).

The 1981 amendment was generally effective July 26, 1981, 90 days after the adjournment of the 1981 legislative session. *See* Const. art. 2, § 41 (amend. 26). Sections 8 to 13, 15 to 23, 25, 26, and 35, were made effective July 1, 1984. Laws of 1981, ch. 137, §§ 28, 35. Section 37(1)(a), providing sentencing for class A felonies, was omitted from the sections to be effective in 1984. Therefore, it was effective from July 26, 1981, to April 1, 1982. Laws of 1982, ch. 192, § 13. RCW 9.95.010, which requires imposition of the maximum sentence provided by law, remains effective until 1984. Laws of 1981, ch. 137, § 32. Thus, the court was required to impose a maximum sentence of life imprisonment here. To hold otherwise would require this court to change those effective dates. *State v. Taylor, supra,* dictates that such a drastic change in the legislative scheme under the auspices of statutory interpretation is impermissible.

In *Taylor,* the court observed:

This court has exhibited a long history of restraint in compensating for legislative omissions. In *McKay v. Department of Labor & Indus.,* 180 Wash. 191, 194, 39 P.2d 997 (1934), we stated:

In construing a statute, it is safer always not to add to,

or subtract from, the language of the statute unless imperatively required to make it a rational statute.

More recently we have affirmed the contemporary value of this rule:

This court cannot read into a statute that which it may believe the legislature has omitted, be it an intentional or an inadvertent omission.

*Jenkins v. Bellingham Municipal Court,* 95 Wn.2d 574, 579, 627 P.2d 1316 (1981).

*Taylor,* at 728. The court noted that in only one class of cases have legislative omissions been supplied. In that class, represented by *State v. Brasel,* 28 Wn. App. 303, 309, 623 P.2d 696 (1981), the omission rendered the statute absurd and undermined its sole purpose. We find, however, the court's analysis of another class of cases to be applicable here. In those cases, the Legislature's omission was clearly inadvertent but did not undermine the purpose of the statute. With respect to this kind of omission, the court in *Taylor* stated, at page 729:

The court in these cases has not supplied the omitted language because it was not "imperative" to make the statute rational. To do so would have been to arrogate to ourselves the power to make legislative schemes more perfect, more comprehensive and more consistent. The statutes in these cases remained rational with the omission even though there were inconsistencies in the comprehensive scheme.

Assuming defendant's contention is correct that failure to make the 1981 amendment effective in 1984 was inadvertent, that amendment, precluding a sentence which exceeds life imprisonment, does not render the present indeterminate sentencing scheme irrational. In fact, similar statutes have been construed as being consistent with that policy. In *State v. Bishop, supra,* the court interpreted a statute providing for imprisonment in the state penitentiary for not less than 1 year or more than 10 years as requiring imposition of the maximum 10–year sentence. *See also Lindsey v. Washington,* 301 U.S. 397, 81 L. Ed. 1182, 57 S. Ct. 797 (1937) (statute providing for imprisonment for not more than 15 years required the court to impose a 15–year sen-

tence); *Siipola v. Cranor,* 38 Wn.2d 848, 232 P.2d 920 (1951) (sentence of not more than 10 years was error in light of the larceny statute which provided a maximum of not more than 15 years).

■ While the 1982 amendment of the Sentencing Reform Act would seem to indicate the Legislature intended the 1981 amendment of RCW 9A.20.020 to become effective in 1984, that fact does not authorize the judicial branch to change the effective date provided in the 1981 amendment. Nor does the amendment make our present indeterminate sentence policy an absurdity or irrational. The sequence of legislative events here is similar to those in *State v. Taylor, supra,* where the court declined to correct inadvertent errors of the Legislature. We therefore hold the court did not err in sentencing defendant to a maximum term of life imprisonment.

Second, we do not find the court abused its discretion when it dispensed with a presentence investigation. Under CrR 7.2(a)(5), the court shall order a presentence investigation and report before imposition of sentence unless "the court finds in writing, with reasons stated, that the report would be of no practical use." Here, the court complied with that rule, finding:

> such report would be of no practical use for the reason that the offense committed by the defendant, that being robbery with a sawed–off shotgun after more than twenty–four hours planning, purchase of the shotgun and cutting off the shotgun, are such that the court in any event would feel constrained to sentence the defendant to incarceration in a state penal institution. Further, presentence reports have been taking up to 7 months to complete.

Defendant argues the reasons stated by the court were insufficient because (1) the report may have been of practical use to the court in making a recommendation to the parole board concerning his actual period of confinement, or to prison officials with respect to his rehabilitation, and (2) there is no indication why a delay in completing presentence reports would affect their practical use. We are

not persuaded by these arguments.

■ First, to hold as defendant urges would effectively nullify CrR 7.2(a)(5). Every presentence report may be potentially helpful in those respects. Second, even if we disregard the court's reference to the delay in completing presentence reports, its remaining reasons are sufficient to dispense with the report here. Those reasons were further explained in the oral opinion:

> Well, I don't take the position, gentlemen, that everybody convicted of first degree armed robbery necessarily is going to go to the penitentiary, but I can't think of anybody in this world that I have had before me for the past seven years or eight years that I would give probation to except one, and he was the guy that sat in the car and didn't do anything.
>
> If I understand correctly, this gentleman not only went into the store and robbed it with a shotgun, but robbed another one in Benton County, . . .
>
> Being drunk is not an excuse for armed robbery and there is no way under the circumstances I would ever consider probation. There is no need for a presentence report under these circumstances, . . .

The facts before the court were that defendant planned the robbery with an accomplice, purchased a shotgun and sawed off the barrel to make it easier to hide. The accomplice waited in a vehicle while defendant committed the robbery. The prosecution recommended that he be sentenced to the Department of Corrections for life. These facts are sufficient for the court to conclude a presentence report was of no practical use. *See State v. Cunningham,* 96 Wn.2d 31, 633 P.2d 886 (1981); *State v. Johnson,* 15 Wn. App. 557, 559, 550 P.2d 15 (1976).

■ Finally, defendant asserts the court's refusal to grant him a continuance of 4 to 8 weeks so his counsel could prepare an investigative report violated his constitutional right to counsel. We disagree. Since defendant does not have a right to a presentence investigation, there was no violation of his right to counsel to deny his motion for a continuance to gather the information. Defendant had the period

between February 23, the date of his plea, and March 2, the date of sentence, to prepare information for the court's consideration. He was given an opportunity to present information on his own behalf. In these circumstances, there was no abuse of discretion.

The contentions raised in defendant's pro se brief are without merit. He was fully informed concerning the consequences of his plea and the sentence to be imposed and was given ample opportunity to speak in his own behalf.

Affirmed.

ROE, C.J., and McINTURFF, J., concur.

Reconsideration denied August 2, 1983.